IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 OCT 20 P 3:57

CLERK'S OFFICE
AT BALTIMORE

BY______ ____DEPUTY

AW11CV3008

EUGENNA AILEEN TAYLOR (*pro se*)
P.O. Box 241
Waldorf, MD 20604

Plaintiff :

v.

UNIVERSITY OF MARYLAND, BALTIMORE
655 West Lombard Street
Baltimore, MD 21201
MARY HAACK
ANNE MECH
IRMA ROBINS
JEFFREY JOHNSON
JANET DAVIDSON ALLAN
JANET KAPUSTIN
KRISTIN BUSSELL
THOMAS SAWYER
MALINDA ORLIN
CONRAD GORDON
GAIL LEMAIRE
JOAN DAVENPORT
JANE GOODWIN
TYREE MORRISON
MELANIE COFFMAN
DAVID RAMSEY
WILLIAM E. KIRWAN
JOHN DOE(S) of HOWARD COUNTY COMMUNITY GENERAL HOSPITAL

Defendant :

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

1/17

**INTRODUCTION**

¶1 I, Eugenna Aileen Taylor (i.e, the "Relator," "Complainant," or "Taylor"), state the following in true and correct to my knowledge, belief and/or accumulative evidence documents. As such, the Relator pleads that she is entitled to relief per the United States False Claims Act and Maryland False Health Claims Act, and has filed this civil action (qui tam) to recover damages on behalf the government. Otherwise, per notice of pleadings (i.e., Federal Rules and Court Procedures ("Rule") 8(A)(2) and Rule 18, I cite additional claims and request remedies to which the law may entitle Taylor.

¶2The Realtor files duly, in state and federal courts, and kindly requests courts to allow her the option to later separate, amend, and re-file *qui tam* from that of non-*qui tam* and / or contract breach claims, with select *qui tam* documents possibly redacted in-full and / or in-part. More specifically, Complaint kindly requests the court to 1) accept amendments, disclose further narratives, and provide additional evidence at a future date (tentatively, Taylor estimates within 21 days from 20 October 2011, but request that additional documents are accepted at time beyond the 21 day period from 20 October 2011), per unusual circumstances / resource constraints / forced "disability", and 2) seal documents filed 20 October 2011. Filings made under the seal are in concern for her safety, as well as, the nature in which justice may further pursue. More specifically, the Realtor requests that her name and / or unique identifiers, per this *qui tam* action, remain undisclosed to the public, indefinitely.

**Realtor Background**

¶3 The Relator, in this *qui tam* (civil) / tort case, is an African-American female, of relatively fair color, and with national origins reflecting South Korea. Per Taylor's favorable of character, habit, academic achievements and routine practice, she has been awarded the Office of Naval Research Scholarship and Reagents Scholarship to complete her Bachelors of Science and Master of Business Administration degrees from Clark Atlanta University and Augusta State University Hull College of Business, respectively. Other scholarships / awards received are as follows: Bermuda Biological Station for Research (now known as Bermuda Institute of Ocean Science), University of Notre Dame CANDAX McNair Scholarship, American Geological Institute Scholarship, Yale University Department of Chemical Engineering & Catalysis (summer research scholarship), and an acknowledgement in *the Journal of Palliative Medicine*. While matriculating at a number of educational institutions, Taylor was accustomed to studying / working concurrently at one or more establishments, namely the Medical College of Georgia, Morehouse School of Medicine, several posts at Emory University, and various federal agencies: Substance Abuse & Mental Health Administration, VA Palo Alto Health Care System, VA Central Office in Washington, D.C., and the Centers for Disease Control & Prevention.

¶4 From approximately 2005 – 2007, Taylor invested substantial time / money at Anne Arundel Community College to complete prerequisite courses for the University CNL Program. From 2005 and to date, nearly 6 years have passed and Taylor has not working in her professional field of study – registered nursing. This is in consequence to University's continuing nexus of wrongful conduct directed at Taylor.

¶5 In 2007, Taylor was accepted at the University, an institution well known for a history of discriminatory practices. Taylor enrolled at the University expressly for its CNL Program and to eventually become a forensic psychiatric nurse. The University's Co-Directors, Lemaire and Davenport, of the CNL Program and other key Administrators were made aware, verbal and/or written Taylor was in need of financial assistant to support her University studies and that her career interest encompassed psychiatric nursing. Denied private loans, and aware of only few thousands of dollars available from Stafford loans, Taylor on several occasions, consulted with Davenport and Lemaire, and sought work, either as a University graduate assistant, researcher, or become the recipient of scholarship monies, while matriculating through the CNL Program. She was repeatedly denied scholarships, employment and graduate assistantship positions at the University for reasons the University often claimed that the level of research skills required at the University was *exceptional* to that of Morehouse School of Medicine and Clark Atlanta University, both historically black universities and colleges. Yet, the University's insults did not deter Taylor's quest to pursue studies at the University.

¶6 In 2007, the Complainant was eventually awarded support to complete her graduate nursing studies at the University. She received nearly 100 percent of financial support through the Federal Student Loan Assistance, the Maryland Higher Education Commission Graduate Faculty Scholarships and Grants, Howard County Community Hospital Scholars and the Maryland Senatorial Scholarship.

¶7 The Complainant maintained a grade-point-average (GPA) of ~ 3.5 in fall 2007 and winter 2007/2008 academic semesters, while maintaining a full graduate course load, customarily 16 credit hours per semester and was a candidate for the CNL/MS/RN degree in fall 2008.

¶8 Following the Complainant's formal and written grievance to the University regarding sexual and racial harassment, as well as, expressed concern for course grade during Winter 2007/2008 semester, the Complainant's GPA plummeted below 3.5 in spring 2008, and thereafter. This was a direct consequence of the University's retaliation against the Complainant. In furtherance of their multi-tiered scheme, the University breached the integrity of Taylor's student account records, engaged in fraud, and disputed the merits of her character and claims.

¶9 In 2008, the Complainant's decision to exercise formal grievance channels and call the attention of state and federal agencies precipitated the University to engage in sustainable efforts to mask the Complainant's racial and sexually harassment claims. Taylor continued to cite

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

related and/or similar grievances, thereof. As a result, the University not only continued to racially and sexually harass the Complainant, but elicited multiple novel and on-going ploys (i.e., psychological and racial profiling; subliminal messages delivered by psychiatric nurse practitioners/those with advance nursing experience/other University staff; directed verbal attacks, and on occasion, attacks were coupled with sexual gestures and etc.). This was despite Taylor's pleads for wrongful conduct to stop, noting that she was sensitive to inappropriate expressions relating to race, sex, color, national origin, as well as, intimidation practices, thereof. Nonetheless, the University's wrongful conduct persisted with intentions to academically, financially, emotionally, and physically assault and/or exacerbate the Complainant's status, and thereby, deliberately compromising her well-being, future, and security.

¶ 10As a victim of fraud, discrimination, retaliation, harassment and intimidation practices, Taylor was exp*endable* in the University's continued scheme to defraud the government and students. As such, Taylor and her collection of documents were targeted to dismiss any civil and possible criminal proceedings. In attempts to insulate themselves from liabilities, the University and co-conspirators made systematic efforts to attack Taylor's character, and conceal / selectively destroy any evidence in pursuit of favorable outcomes for the University. From 2008 and to date, some of Taylor's collection of documents, stored at University campus apartments, and Public Storage facility located in Maryland remain missing. On 18 September 2011, Taylor reported burglary at Public Storage to law enforcement officials, but to no avail. Missing documents, privacy invasions, and suspicious activity / injury (peculiar automobile accident during fall semester 2008, whereby Taylor's student health insurance was dropped) have been evident since 2008.

**23 January 2008,**

¶11 Nichole *Widerson, University Assistant Director, Auxiliary Services writes: "Hello Eugenna, As I walked past the Pascault Row apartments this morning, I noticed that you had left one of the windows of your apartment wide open. I called our maintenance chief (and asked him to go to your apartment and close the window."*

¶12 Taylor, a member of a protected class, asserts that at minimum, there is causal connection between the protected activity and the wrongful dismissal / termination. Opposing activities that violate Titles VII, VI, IX, slander, libel, constitutional rights, fraud and etc., she notes that causation has been established per the University's knowledge of Taylor's protected status, as well as, Taylor's engagement in protected activities. Furthermore, records indicate that protected activities were in close proximity to the University's adverse actions against Taylor, which may be construed, as causation-in-fact. Adverse actions include but not limited segregation, disadvantageous transfers and /or assignments, unwarranted negative evaluations, manipulating student records, slander, libel, harassment, and intimidation practices. Continuous causal (sufficient) links include but not limited to, the University stating and with chuckles, "all we have to say is that these were mistakes" – a foray to cruel and unusual punishment, as Taylor continues to exist with substantial risk of harm and imminent dangers.

**CAUSE of ACTION**

**¶13** Taylor states clear, simple and direct legal causes of action with pleadings reflective of general and / or special damages, personal injures and physical suffering, loss of income, impairment of earning capacity, loss of / or damage to property, punitive damages, and *qui tam* Realtor entitlements. Taylor seeks compensatory and punitive damages for the following:

¶14 Maryland False Health Claims Act ("Act"), codified from section 2-601 to section 2-611 of the Annotated Code of Maryland.

¶15 False Claims Act 31 U.S.C. §§ 3729 – 3733; Relator is entitled to percentage of monies recovered by the government.

¶16 Title VII Section 219 (2) (d), the University and/or affiliates are vicariously liable for harassment and knowingly engaged in unreasonable deferrals, and fraudulent misrepresentation and / or concealment of facts to deny Taylor's claims

¶17 Title VII of Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex and / or national origin (RCRSN), as well as, practices that have the effect of discrimination per RCRSN. *** Per the Maryland Human Relations Act, Taylor intends to file (state) employment discriminations with the Maryland Human Relations Commission.

¶18 Per Title IX of the Education of Amendment of 1972, the University is liable, vicariously and otherwise, for Thomas Sawyer and other University representatives.

¶19 Civil Rights Act of 1991 provides monetary damages for intentional employment discrimination

¶20 Under section 1983, University supervisors, are liable per their own acts / omissions, as the requisite causal connection has been established by a series of acts made by the University reasonable knew would cause and inflict the constitutional injury. Supervisors acted, or failed to act, in a manner that was deliberately indifferent to a Taylor's Eight Amendment, civil rights and harassment allegations. This is sufficient to demonstrate the involvement and liability. Select University officials are being charged for their own culpable action or inaction, rather than being vicariously liable for the cupable action or inaction of her subordinates. Person of

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

supervisory status, are liable in their individual capacity because they knew or should have known about the dangers, and that they were deliberately indifferent to those dangers. Taylor seeks compensation directly from those in supervisory capacity.

¶21 Constitutional discrimination. The Fourteenth Amendment asserts rights of due process and equal protection.

¶22 Exposure of Taylor's medical information violates the Family Educational Rights and Privacy Act of 1974, and HIPPA. Compliant files a 42 U.S.C.1983 action as the University, as sensitive information may not be released.

¶23 Title VII prohibits intentional acts of discrimination based on race, color, religion, sex and national origin, 42 U.S.C §§§ 2000e-2(a)(1); §§ 2000e-2(k) (1) (A) (i) (disparate treatment; disparate impact), as well as policies or practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities. Taylor seeks monetary compensation.

¶24 Code of Federal Regulations (CFR) Title 13 includes, but not limited to, regulations regarding a student's right to a hearing, and certain disclosures for federal programmatic purposes. Taylor was denied this, and seeks monetary compensation.

¶25 Maryland Annotated Code, Education Article § 5-214 indicates, "the State Board is the educational authority for the expenditures and administration of those funds." For more, Title 1091 (3) (a) (b) states, in order to receive any grant, loan or work assistance, "a student must be carrying at least one-half the normal full-time work for the course of study that the student is pursing, as determined by an eligible institution, and (b) is enrolled in a course of study necessary for enrollment in a program leading to a degree or certification." As such, Taylor asserts that she is entitled to recover money that the government paid to the University. This may reflect remedies available via Maryland codes and / or the United States independent of statues, respectively.

¶26 Slander and libel (i.e., per se and per quod)

¶27 Contract breach

¶28 Infliction of severe emotional distress, intentional and otherwise

**TOLLING of STATUES**

¶29 Taylor believes statues have been tolled for at least one and / or more reasons: (1) Taylor has been want of due of diligence, with regards to causes of action against former officers at the University and relevant government representatives. Notwithstanding the aforementioned, Taylor asserts that her situation has been severely confounded by forced "disability;" yet as practical, she has been diligent in pursuing remedies and wanting diligent prosecution of applicable matters. Taylor continues to adversely affect economically, physically, professionally and emotionally. Consequently, she has been placed in peculiar forms of unwanted restraint, (2) University attorneys, state, and representatives have a fiduciary responsibility to University students and the public. Counsel breached their known "legal duty" and acted with deliberate indifference toward the probability that deficient performance of duties / tasks may contribute to Taylor's civil rights deprivation. Furthermore, University Counsel members intentionally concealed their associations / memberships, board and / or otherwise, with organizations of immediate interest (i.e., Howard County Community General Hospital and etc.). Counsel also denied Taylor's request for detailed compliant and investigation procedural policies / guidance, were aware of several University's verbal assaults directed at Taylor per numerous Cc: (Correspondence copies received and otherwise), and facilitated / encouraged University policies that may be deliberately crafted to prey on student who would be unlikely to defend themselves or individuals deemed politically powerless. Moreover, per federal tolling statute, 28 U.S.C. Sect. 1367, the statute of limitations on state claims in federal court "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed."

**26 March 2009**

¶30 Irma Robins, University Counsel, writes: "Dear Ms. Taylor: I am writing in response to your e-mail to President Ramsay dated March 25, 2009.Following lengthy investigation, the U.S. Department of Education, Office for Civil Rights ("OCR") sent Dr. Ramsay a notice of determination regarding allegations the University discriminated against you on the bases of race (African-American) and sex by failing to address your complaints of different treatment, retaliation, and racial and sexual harassment by various University personnel. The Office of Civil Rights concluded each of your complaints was fully resolved."

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.8113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

**15 January 2009**

*¶31 "I spoke to the attorney and she advises you to go to the higher authority in your school to post your complaint – Registrars Office, etc. It is not something our Division would handle. Sorry we couldn't help you further. Hope things work out for you. ~ Toni Monkrousos Administrative Aide Criminal Division"*

**11 June 2009** at 12:17 PM

¶32 Taylor writes to the Maryland State Attorney General (To: amonokrousos@oag.state.md.us; oag@oag.state.md.us): *"I have repeatedly contacted the State. My complaints have been dismissed regarding several complaints, some of which are noted, Below. I would like to know why the State refuses to acknowledge my complaints and / or reports. 1) The University of Maryland, Baltimore exposed my private medical data (i.e., HIPPA violations) and failed to secure my medical records. 2) The University of Maryland, Baltimore denied my accessing health services and other resources. 3) The University of Maryland Baltimore Representatives conspired to manipulate my student accounts, grades and etc. 4) The University Representatives conspired and Banned me from campus, campus housing, access to postal mail and etc. I would like to know what actions will the State Initiate to address the aforementioned."*

***11 June 2009*** *at* 1:33 PM

*¶33 Taylor writes to the Maryland State Attorney General (To: amonokrousos@oag.state.md.us; oag@oag.state.md.us): "The State's denial and / or deferral to address my concerns / reports is unacceptable. Deliberate neglect is unwelcome."*

**23 March 2010**

¶34 Taylor emailed Members of the Maryland Ethics Committee and Senators: John Astle; David Brinkley; James Brochin; Richard Colburn; Joan Canter Conway; Ulysses Currie; James DeGrange; George Della; Roy Dyson; George Edwards; Nathaniel Exum; Jennie Forehand; Bobby Zirkin; Lowell Stoltzfus; Norman Stone; James Robey; Jim Rosapepe; Bryan Simonaire; Richard Madaleno; Nathaniel McFadden; Thomas Middleton; "Mike" Thomas V. Miller; Alex Mooney; Donald Munson; Anthony Muse; Douglas Peters; Paul Pinsky; E.J. Pipkin; Catherine Pugh; Jamie Raskin; Edward Reilly; Katherine Kalusmeier; Rona Kramer; Mike Lenett; Brian Frosh; Rob Garagiola; Lisa Gladden; Barry Glassman; Larry Haines; David Harrington; Andrew Harris; Nancy Jacobs; Verna Jones Rodwell; Edward Kasemeyer; Delores Kelley; Allan Kittleman.

**03 November 2010**

¶35 Taylor receives an email from Antony South, Executive Director, Maryland State Board of Education: *"Ms. Taylor: The Maryland State Board of Education has no authority to take action on your complaint. You should direct your correspondence to the Board of Regents, University System of Maryland. . . . "*

**03 November 2010**

*¶36* Eugenna writes to Dr. Kirwan: *"Dr. William E. Kirwan: The purpose of this letter is to request disciplinary action against Janet D. Allan, University of Maryland Baltimore School of Nursing Dean. . . . . Cc: Maryland State Department of Education , Maryland State Board of Education Members / Executives:James H. DeGraffenreidt, Jr; Charlene M. Dukes, Mary Kay Finan; Kate Walsh; Ivan C.A. Walks; Donna Hill Staton; James Gates, Jr.; Madhu Sidhu; Guffrie M. Smith, Jr.; Luisa Montero-Diaz; Sayed Naved; Gayon M. Sampson; Nancy S. Grasmick; Tony South"*

**05 November 2010**

¶37Eugenna writes to Doyle and Madarang: *"Good afternoon, I understand that Ms. Janice Doyle and Ms. Tina Madarang are Chief of Staff to the Chancellor (Dr. William E. Kirwan) / Secretary to the Board of Regents, and Executive Assistant to the Chancellor, respectively. Kindly ensure that Dr. Kirwan reads and acknowledges an e-mail with subject heading: "ATTN: William E. Kirwan - Crime Involving Moral Turpitude, Requesting Disciplinary Action . . . ." This email was addressed to Dr. Kirwan (bkirwan@usmd.edu) on 03 November 2010, 3:26 PM. Thank you, "Eugenna Taylor"*

**29 July 2011**

¶38*"'Mr. Grossman, I am requesting 1) a disclosure of Attorney Grievance Commission of Maryland (AGCM) polices, if any, regarding communication restrictions, as well as, applicable date when these policies were made known to the public and/or enforced, 2) < per unusual circumstances> on exception to any policies with regards to communicating via email, 3) Ms. Donayre's Maryland bar number, 4) Ms. Donayre's tenure with the AGCM, and 5) specific detail with regards to how, when, and by whom are persons appointed to AGCM. Please itemize #5 with respect to each current AGCM member. All replies should be sent to eugennataylor@yahoo.com AND via certified mail to PO Box 14782 Atlanta, GA 30324. Thank you, Eugenna Taylor"*

**25 August 2011**

¶39 Taylor complains to the AGCMD regarding Caroll Donayre's communications to the University to provide legal advice and / or aid in the furtherance of the University's wrongful scheme to deprive Taylor's rights and cause additional injures. *"To date, the*

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113, Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

*AGCMD remain non-responsive to my telephone and email communications regarding outstanding matters. I have repeatedly telephoned the office to either speak with Mr. Grossman and / or Caroll Donayre; however, Grossman / Donayre remain "unavailable." As such, notified the AGCMD secretary / telephone receptionist to 1) check the AGCMD email system, as I have sent electronic correspondences and 2) have Grossman to contact me via email, eugennataylor@yahoo.com, the only reliable method of contact at this time. Eugenna Taylor"*

**September 2011**

¶40 Taylor visits the Office of the State's Attorney for Baltimore City 208 The Clarence M. Mitchell, Jr. Courthouse Baltimore, MD 21202, and speaks with Angela M. Gallagher, Assistant State's Attorney. Gallagher states, *"without a police report, we cannot do anything."*

**09 September 2011**

*¶41"At minimum, I have been adversely impacted economically, medically and professionally. I have repeatedly requested information from Grossman et al; however, my request for specific, detailed and prompt information, particularly as it relates to communication policies and the enacted dates for policy implementation / enforcement, as well as, the status of my communication materials regarding my complaints. Interestingly, and most recently, on 09 September 2011 at 11:03 AM, Mr. Grossman responds to my question: "What is the communication policy (Eugenna Taylor)?" with "Because I said so (Grossman). Mr. Grossman, til I receive the Maryland Attorney Grievance Commission policy in written form, whereby, I may read and possess it, I will continue to utilize email as a primarily form of communication, per forced conditions; again, I have been adversely impacted. Because I said so" is unacceptable, demeaning and unprofessional.*
*Eugenna Taylor PO Box 241 Waldorf, MD 20604"*

¶42 (3) Taylor asserts that the University failed to take measures that would have made earlier injuries and harm less likely. Thereby, the University's conduct does not necessarily have to establish the University's admission, as conduct is equally consistent with Taylor's injuries due to contributory negligence and / or culpable conduct. (4) From 2008 and to date, Taylor has contacted several government representatives, including but not limited to legal aid organizations and political appointees, to seek appropriate intervention, redress, submittal of claims, and / or resolve, but with limited and / or no avail. Officers of the court (i.e., lawyers, and state / federal representatives) have fraudulently presented the facts, provided unwarranted legal advice to one or more of the defendants and / or omitted critical facts so the official duties have been impaired in the impartial performance of legal tasks. (5) Moreover, at time in question (i.e., 2009), whereby, Taylor was subject to multiple adverse conditions (i.e., injured, without health insurance, legal representation, housing, receipt of income to support living and forced into a peculiar form of restraint); at present, one or more of the aforementioned concurrent "disabilities" have not been removed since 2009, the estimated date reflecting multi-retaliatory actions and the approximate onset.

¶43 The aforementioned list is not exhaustive; Taylor intends to elaborate and provide further evidence within 21 from file date.

TAYLOR'S ALLEGATIONS STATE A CLAIM UNDER RULE 12(b)(6) & OTHER FRAUDS
**Preliminary Plead Sufficient to Support & Inference that False Claims Were Submitted**

¶44 In crude catalogs, there are two issues, not necessarily mutually exclusive, at hand: (1) health fraud / representation fraud, and (2) state and federal financial fraud.; both of which have 3 essential elements of this action are namely (1) the University / co-conspirators made statements and took actions to continue receiving money from the governments, (2) statements and /or records the University present were false, and (3) the University / co-conspirators knew it was false.

**Health Fraud & Representation Fraud**

¶45 Taylor alleges that Allan, Orlin, Kapustin, Davenport, Lemaire, and Sawyer, licensed nurses and staffed as a University representatives, as well as, Melanie Coffman and Tyree Morrison, and other University leaders in the University School of Nursing (SON), evaluated Taylor for medical issues outside the scope of their professional licensure and / or intended instruction at an institution receiving both state and federal funding. As such, University representatives not only demonstrated false representation, but fraudulent practices. More specifically on 23 January 2009 , Allan states *"After extensive review following consultation with academic leaders in the SON, I have concluded in my best professional and academic judgment that Ms. Eugenna Taylor is not qualified to progress further in the graduate Clinical Nurse Leader (CNL) Program and should be dismissed. "* On the same day, Orlin further states, *"After extensive review following consultation with academic leaders in the SON, I have concluded in my best professional and academic judgment that Ms. Eugenna Taylor is not qualified to progress further in the graduate Clinical Nurse Leader (CNL) Program and should be dismissed. "* Taylor alleges that officials were not qualified to assess and / or provide psychological and physical health services and evaluations, thereof. Put simply, the University routinely rendered care (although sub-standard) that only a competent and qualified provider may to perform with Taylor's consent. Hence, Taylor applies liabilities in the standard of care received by officials. Officials performed duties medically and/ or procedurally unreasonable and fraudulent.

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0173; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

¶46 The University's policy states," *At only time during the program, students may be required to be evaluated by University Student and Employee Health for physical or psychological evaluation. Failure to comply with this policy may result in dismissal from the school."* University officials never required that Taylor report to Employee Health for physical and / or psychological evaluation. Instead, the University took it upon themselves to perform unwarranted psychometric, psychological and physical evaluations on Taylor during requested meetings, and during the time in which Taylor was *conveniently* without student health insurance.

¶47 During an unspecified period, but within fall 2008 semester, the University dropped Taylor's student health insurance. This type of fraud discouraged Taylor's usage medical access and legitimized unwarranted psychological and medical evaluations that noted Taylor being disabled, unfit, and / or at higher risks for illnesses, particularly illnesses that may be communicably spread (i.e., tuberculosis). Acting in concert with the interests of the practices of select health insurance companies, the University hoped to deflate and / or maintain insurance premium costs, by promoting health insurance for *worthier* students. However, and likely more sinister, the University was inclined to use this conveniently eliminate Taylor, per Taylor's discovery of fraudulent practices, including but not limited to pattern of practices of red-lining manipulating student records. In short, Taylor was primarily dismissed from the University as a result of evaluations that served malicious and covert purposes. The purpose was to 1) steer Taylor to make fraudulent claims based on disability, as defined by the American Disability Act, 2) assert that grades issued to Taylor reflected her disability, and 3) convey that passed and future employment discrimination claims, based on Civil Rights Act of 1991, can be conceivably and / or situationally manipulated based on Taylor's disability status, thereby, further legitimizing continued fraud, and 4) further dismiss other claims made by Taylor. Put simply, the University 's liabilities per students' claims for disability discrimination, whether real or not, asserts less aggregate damages and negative stigma for an institution employing discriminatory practices based on race, sex, national origin and / or color, and concealed practices of state and federal financial fraud. The University profited in preserving reputation, and the kick-backs Tyree Morrison and Coffman received were reciprocated in the form of favorable University disposition and actions (i.e., *I'll scratch your back, if you'll scratch mine*). As such, the University employed evasive schemes predicated on clandestine activities, acts and plans, portrayed as stand-alone acts, but in-fact were mainly concerted efforts to defraud the government and *dismiss* students that vigorously challenge the University's fraudulent pattern of practices and / or report practices to authorities.

**State and Federal Financial Fraud**

¶48 Prior to the Student Aid & Fiscal Responsibility Act signed by President Obama, March 30, 2010, and during the time in which Taylor was a student at the University, the State of Maryland Higher Education Commission ("Commission") administered grant programs by federal state funds. Open source information indicates USA Funds and Sallie Mae, served as a guarantor and created a contractual loan programs to students willing to work in Maryland upon graduation, respectively. "During the fiscal year ending Sept. 0, 2009, USA Funds guaranteed more than $273 million in new education loans to more than 26,000 Maryland borrowers . . . "(www.http://content.usafunds.org/financial_aid/USAFundsDocuments/2009_MDAnnual.pdf).

¶49 Students awarded state loan programs 1) must reimburse the State for all contractual state loans repayments / benefits received, and while the guaranty agency became responsible for default losses. Thereby, the agency could file a claim with the U.S. Department of Education for reimbursement, and/or receive default aversion fees for assisting students with "managing" incurred federal loans.

¶50 In fall 2008, the defendants engaged in "legally false" certification, whereby falsely certifying compliance to Title 20 § 1091 and Title 20 §§, whereby the University and possibly select individuals representing the Maryland Higher Education Commission were intimately knowledgeable of the critical issues at hand -- fraud. Taylor presents evident clearly suggesting that University representatives were dissembling and promoted fraud for their own personal gain and University's reputation for producing *worthy* graduates. Factual allegations reflecting fraud, and with respect to Federal Rules and Court Procedures (9) (b)), are stated with particularity. Taylor's allegations of fraud are noted to be above the speculative level. From in or about 2007 to present, the defendants conspired with each other and with others to devise and participate in a scheme to defraud the government, and students of honest services.

¶51The University violated the False Claims Act by steering *unworthy* students, such as Taylor, toward non-required courses for degree requisites, rather than permitting enrollment in courses necessary for the specific degree sought. and / or requiring actively enrolled / registered students , such as those enrolled in Adult Health, to take a medication calculation exam; whereby, upon failure of the exam, student may receive a F grade or *voluntarily* withdraw from the course without grade penalty. Many students chose the later. As such, false statements and / or grades were made to accelerate payments before otherwise due by fulfilling contractual terms, regardless of students' part-time / full-times statuses, and forcing student to register, attend, and / or remain registered after the drop-add period. Thereby, should students fail class preconditions (i.e. medication exams), they usually withdraw from the course, and yet the University collects for fee paid (i.e. for Adult Health), either in-part or in-full.

¶52The University's schemes involve forcing student to prolong studies. The University coerced and / or steer *unworthy* students to enroll in courses not required for their degree of study, and imposed conditions likely to result in failure. Stated simply and as an example, there is no standing written policy indicating that NURS 514 is a required prerequisite for the course.

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

¶53 On 12 August 2008, the University met with Taylor to assess whether the continuation of studies is granted. The University initially denies the Complainants registration for any classes in fall 2008 and thereafter, rescinds the denial and then defers registration. More specifically, Dean Kapustin and Dr. Kauffman bans the Complainant from registering in fall 2008, per the Complainant's citing the need for an external investigation (i.e., to be conducted by the OCR, U.S. Department of Education). In short, the Complainant is forced to miss several days of NURS 514 Clinical Simulation Lab, a highly recommended exercise to pass the NURS 514 course, as well as, incur late registration fees. Per an e-mail correspondence from Conrad Gordon dated 8 July 2008, "The Clinical Simulation Lab will be open for practice during the final two weeks of the summer break (11-22 AUG). The lab will run Monday-Friday, 0830-1600. . . . .I HIGHLY recommend that you practice all the skill listed in the lab here at school. TAs will be available to assist."

¶54 Jeffrey Johnson, at minimum, knowingly falsifies Taylor grade for presentation #2. Put simply, Taylor never was given an opportunity to engage in presentation #2. Per Johnson's complaint regarding his assessment to University administrators, Taylor was suspended from attending his course, and had missed approximately 4 weeks of class.

¶55 In scenarios described above, Taylor asserts that a (1) that the University provided false statements of material fact, (2) the University's knowledge that the statements were false, (3) the University intended that the statements induced Taylor, as well as, the government to act, (4) the government's reliance on statements., and (5) false statements caused unauthorized payments to the University; kindly review supplemental evidence provided.

¶56 It is clear that the University also knowingly submitted false statements, records, and receipts with malice and/or intent to deceive and harm. Claims, factually false (kindly review the evidence enclosed) were submitted for the purposes of misrepresenting compliance with precondition of payment for government, and in this case, attempting to criminally entrap Taylor while forcing her in a condition of peonage. Demoted, Taylor and other students received compromised educational services and were billed as such.

¶57 The enclosure documents provided with this filing clearly show evidence of false receipt, statements, and records, including but not limited to having Taylor inappropriately secure funding while enrolled less than half time student. More specifically, on 28 October 2008 and before monies were readily accessible to Taylor, a memorandum composed by Elizabeth Urbanski, of the MHEC, confirms that the both she and the University acknowledged that Taylor was currently enrolled less than half time. Furthermore, the University issues fall 2008 outstanding bills and grades for Taylor, albeit, technically and per her health insurance status, Taylor was never enrolled and / or should have never been allowed to continue fall 2008 studies, based on insurance status.

**2 December 2008 14:39:14-0800 (PST)**

¶58 Taylor writes to nmcda001@umaryland.edu, Elizabeth.cavallucci@ed.gov: *"Ms. Nicole McDaniel-Smith, Please indicate the correct current total charge / balance for tuition / fees for fall 2008. Is the balance $6,517.00, as listed on Student Information Management System (SIMS) Registration Fee Assessment (12/02/2008) or $5,498.00, as listed on SIMS Account Summary by Term (12/02/2008)? Kindly reply via e-mail."*

**3 December 2008 3:19 PM**

¶59 Leik Hawkin (aidtalk@umaryland.edu) writes, *"Hello Eugenna, This is a question that you need to contact Student Accounts with at 410.706.2930."*

¶60 As early as 2007, the University encouraged University students to utilize University Health for the tuberculin tests. While University covered tuberculin tests for undergraduate nursing student body, graduate student incurred fees. In 2007, Taylor was double-billed for her tuberculin test. In 2008 and according to University records, Taylor was encouraged to receive the tuberculin test at University Health, as the University cited "outbreaks" and an imminent "need."

**09 February 2009**

¶61 *"Dear Student, Your account is PAST DUE! Please find attached a statement representing monies owed to the University of Maryland, Baltimore. Kindly remit payment or call this office as soon as possible to discuss this account before the due date on the bill. Failure to communicate with this office and resolve this outstanding oblicate by March 9, 2009 may result in your account being deemed delinquent. Delinquent accounts are forwarded to the State of Maryland Central Collections Unit and are subjected to a 17% collection fee. Please be advised that CCU reports delinquent accounts to the major Credit Reporting Bureaus, and you may be subjected to interception of your State Income Tax refund to satisfy this debt. If you have any questions, please feel free to call me at 410-706-1336. Thank you. Sincerely, Nicole L. Frazier."*

**EMPHASIS ON SELECT**
**FACTS - PRETEXTS & CONTINUING NEXUS OF WRONGFUL CONDUCT**

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

¶62 The University claims that Taylor's behavior and academic performance was wanting. Nonetheless, Taylor disputes the validity of the criticism. The question is not whether Taylor honestly believed the reason was inaccurate or unfair, although she claims statements were plainly inaccurate and con-fabricated, but whether the University believed the reasons they offered to explain the continued retaliation and suspension and later dismissal were based on facts. The immediate interest, in question, leans toward malicious intent. The critical issue regarding the matters is as follows: the University proffered reasons and / or actions were pretexual. Essentially, reasons and / or actions were based on lies and attempted to conceal schemes and / or legitimize a continuing nexus of wrongful conduct.

¶63 The University "on going reliance on false testimonies," without due process communication constituted a "continuing violation of Title VII, Title IX, and constitutional discrimination. In from spring 2008 to 2009, select students and University representatives lied about Taylor's behavior and performance in attempts to attack Taylor's *worthiness* to continue at the University, per her claims and discovery of fraud. In furtherance of the University's scheme, the University knowingly accepts ill reports of Taylor's performance and behavior without allowing Taylor to participate in the University's internal judicial process. The University failed to follow-through and / or equitably enforces adequate and transparent judicial processes. The University failed to offer alternative legal mechanisms for alternative dispute resolution. For months, Taylor, took refugee in a hotel, while she waited for the University to allow her to participated in the judicial processes.

¶64 Taylor asserts that claims that the University made several statements, written and verbal, in connection with her dismissal that were malicious, reckless less and untrue. Per patterns of practice, the University enforced upon so-called protection of "privileges" for purposes of engaging in deleterious acts against Taylor, while selectively releasing communications and / or engaging in acts from which they could assert favorable outcomes. Albeit, the University knowingly disclosed information regarding Taylor to third persons, thereby, rendering such communications without privilege. The University monopolized Taylor resources with intent to subject her to a form of peonage, as well as, professional and personal ruin.

**20 November 2008**

*¶65 "I have received your email dated November 19, 2008 and accept it as your appeal of my decision to temporarily suspend your appeal of my decision to temporarily suspend you from attendance in Dr. Johnson's NURS 679 class, pending the outcome of Judicial Board proceedings into a complaint regarding your alleged unprofessional conduct in class, including abusive language and disruptive behavior. The complaints persuade me that immediate temporary action is necessary to prevent further disruption of the class. Your statement that 'the allegations in the letter are unfounded' leads me to believe you do not agree that your behavior is disruptive and that you do not plan to change your behavior. For these reasons, I am upholding your temporary suspension from attendance in Dr. Johnson's NURS 679 class, pending the outcome of Judicial Board proceedings into the complaint submitted by Dr. Kapustin. You will have a full opportunity to be heard during the Judicial Board process. You permitted to enter the School building to attend other classes and for other legitimate School activities. If you do not comply with the temporary suspension from attendance in NURS 679 class, I will request that the President ban you from campus."*

**HARASSMENT**

¶66 University officials requests for weekly meetings, often times causing Taylor to miss in-classroom studies with other students. Taylor found the University's conduct to be abusive, offensive, hostile and unwarranted. Sexual harassment was so severe, pervasive and offensive, that Taylor was being barred from educational benefits and access to full education benefits, thereof.

**25 September 2007 8:07 PM**

*¶67 "Dr. Davenport: I will meet with you approximately 11:15PM, tomorrow; however, I may arrive @ 11:30PM, as I am scheduled to attend Health Assessment Lab. Yes, I signed-up last Wednesday; this indicates my level of enthusiasm-oriented x4. 'Reason & judgement are the true qualities of a leader.' – TACTIUS Eugenna Taylor."*

**14 November 2007 8:34AM**: Complainant writes to Major Beth Pettit-Willis

¶68 *"Kindly address this hypothetical question/situation when you have an opportunity: a novice rn is providing a complete health assessment on Mr. Jeopardy, a new patient . . . Thank you, Eugenna Taylor CNL Student in Health Assessment."*

¶69 The Complainant did not address the 14 November 2007question/document to Dr. Davenport. Nonetheless, the Complainant is beckoned to meet with Dr. Davenport. The meeting did not address and resolve the question/situation that was originally presented to Major Beth Pettit-Willis. During meetings with Dr. Davenport, the Complainant experienced harassment.

**23 January 2008, Adult Health Competencies**

¶70 Complainant complete Adult Health Competencies with the exception of Narrative System Documentation. Davenport instructed Complainant to not to be concern with Narrative System Documentation as I will be assigned to appropriate clinical instructor.

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

Note: During meetings in Davenport's office, Davenport indicated that *"you people don't read."* Davenport threatens the Complainant stating "You don't live like a graduate student; you are unfit to be a nurse." Davenport also made reference to: If you won't meet with me I can make you extend your Program here . . . you'll be lucky to graduate from this Program; I know your background.

**23 January 2008**

¶71 On the same day, Davenport states, Adult Health Competencies, Taylor received an email from Nichole *Widerson, University Assistant Director, Auxiliary Services. Wilderson writes: "Hello Eugenna, As I walked past the Pascault Row apartments this morning, I noticed that you had left one of the windows of your apartment wide open. I called our maintenance chief (and asked him to go to your apartment and close the window."*

**Early spring 2008**

¶72 The Complainant was enrolled in NURS 514 course. Per the requirements of the NURS 514 course, both clinical simulation and medication calculation exams must be passed, with the later passed at 100 percent. Mr. Gordon cited the Complainant did not pass medication calculation exam #1 due to citing 0.5 of pill rather than indicating ½ of pill, and "needed to be humble." In response, the Complainant reports to the University regarding Mr. Gordon's failure to acknowledge that 0.5 and ½ are equivalents, the instructor's inappropriate questions and comments (i.e., harassment). This harassment includes, but is not limited to, Mr. Gordon forcing the Complainant meet with him in hostile environment, less than two meters away from the office of Dr. Davenport, the Co-Director of the CNL Program . Note: Complainant complained about Dr. Davenport request for weekly meetings during in fall 2007 to Dean Morton and CNL Co-Director, Gail Lemaire). Mirroring fall 2007 the Complainant's grievances against Dr. Davenport, complaints regarding Mr. Gordon were also dismissed. The Complainant was advised to withdraw from the course in spring 2008. The Complainant withdrew from NURS 514 per the authorization of Dean Kapustin and Co-Director of the CNL Program, Dr. Gail Lemaire.

**3 February 2008**

¶73 "Eugenna: *I'm a bit confused. Do you want to make an appointment or not? I'm also a bit unclear on your answers to my questions. Here are those questions and my interpretation of your responses. Please clarify. What is your primary language? You say Korean, but you don't write or read it. Total immersion Arabic; this implies either living in Egypt or being trained at a language school (such as the Defense Language Institute). I have assumed that English IS your primary language, but you are more comfortable with conversational Korean. Where are you from? I get the impression you have moved a great deal. Let me ask this: Where were you born? Where do you consider home? Where did you get your previous degree? You really didn't answer this. Let's try this. You are a CNL student, and therefore by definition have a prior bachelor's degree as a minimum. What college or university granted you that degree? What is that degree in? What was your major? What does it say on the diploma? I am trying to help you. Please use the "Reply" button when you respond. Conrad"*

¶74 Taylor was intimidated and harassed. Thereby, assaults involving threats of force and insulting remarks were exercised to cause Taylor severe emotional and / or physical distress. In retrospect, Taylor has notified University officials that she was physically an emotional sensitive to derogatory comments, questions, humiliation, intimidation and discriminatory practices. Moreover, Taylor perceived that Gordon's personal questions were an invasion of her privacy, harassing and nature, and forays to further inappropriate sexual and race / color / national origin discussions.

**6 February 2008 11:57 AM:** Email from Conrad Gordon indicates:

¶75 *"I am assuming that you are requesting an appointment for 1640 today. I do not know how long my meeting will last. I can not leave it to meet you, but I will keep an eye on the time and hopefully make it by the time you indicated. Please wait for me if you can. We can meet in Suite 355, which is opposite my office."* Suite 355 is opposite to Conrad's office, but is located down a long corridor. Suite 355 is Davenport's domain. Repeated interactions that were within close proximity to Davenport were unwelcome, and caused severe distress.

**20 April 2008, 11:54 AM**

¶76 Major Thomas Sawyer NURS 511 clinical instructor writes: *"As long as you continue to interact appropriately with patients and staff and work on completing your **pap!** er, you will have achieve the two goals I set for you. . . "*

¶77 Evidence shows discriminatory attacks and/or harassment. Quid pro quo (i.e., listing pap <smear> as part of Taylor's achievement / goals / requirement was shocking and humiliating for Taylor). At times, Sawyer's attacks were coupled with inappropriate sexual gestures and/or indications. Taylor was utterly humiliated and failed to benefit from a harassment- and intimidation-free educational environment The University violated Title IX and the Equal Protection Clause of the Fourteenth.

¶78 Per Title VII Section 219 (2) (d), the University and/or affiliates are vicariously liable for harassment and knowingly engaged in unreasonable deferrals, and fraudulent misrepresentation and / or concealment of facts to deny Taylor's claims. The University should have known and / or

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

reasonably knew the facts, that they were vicariously liable for Tom Sawyer's sexual harassment and Mech's failure to disclose her association and/ or concurrent position at Howard County Community General Hospital presents liabilites. This "accepted practice" is to the contrary of University counsels' "legal duty." Put simply, Taylor later discovers that Ann Mech, is also a board member at Howard County Community General Hospital, the facility that also awarded Taylor a nursing scholarship. Concealment of conflicting interests and/ or activities fails to reflect degrees of reasonable care, skill and / or ethics expected of members of the legal profession. Put simply, it is a reasonable expectation for counsel to tell Taylor that s/he has personal interests, membership, and / or activities that may affect his professional judgment. Thereby, Mech may liable for legal malpractice. Essentially, the University failed to take effective measures to remedy the harassment, keep it from reoccurring and disclose important information in pursuit of an impartial investigation and need for transparency.

**September to November 2008**

¶79 Taylor felt uncomfortable with Jeffrey Johnson eyeing her breast. As such, she frequently shielded her breast with her laptop computer. In response, Johnson announces that laptops cannot be used in the classroom for note-taking. Taylor complied with Johnson's announcement. Johnson and students, Coffman and Morrison, falsely accuses Taylor of Taylor using her computer after the announcement was made. Taylor disputes the accusations. While Taylor admits occasionally used her laptop to capture classroom discussions prior to the announcement, Taylor ceased typing notes on her computer after the announcement. Put simply, Taylor continued to take notes in hand penmanship, but kept her laptop and /or books in up-right position to shield Johnson's view of her breast.

**22 November2008**

¶80 Taylor infers, based on continuing situational and contextual harassment, that "b" usage intentionally denoted "black." *Dean Allan writes, "The e-mail of 11/21/08 sent at 11.37 am is the only correspondence other than re-sending the letter that you received by e-mail on 11/20/08 2.15 pm I corrected the spelling of your b name. The rest of the letter remained the same. Janet Allan."*

¶81 Incidents of harassment, as listed above, are not exhaustive; Taylor intends to further elaborate and/or provide evidence within 21 days.

**CAUSAL LINKS WITH STATED PROXIMITY (TIME and / or DATES)**

¶82 Issues presented are confounded with triable issue of facts. More specifically, the University participated in scheme to improperly enforce the use of Taylor's time and facilities while defrauding the U.S. Government. On occasions, Taylor engaged in conversations with faculty and more specifically, with Dr. Michael in January regarding disparate treatment with regards to instruction, feedback, and issuance of grades. Put simply, the University focused on exploring and / or constructing false cultural, racial, psychological motif, specific to Taylor, determines the merits of legitimizing Taylor's treatment and academic performance. Repeatedly, offensive and non-academic comments and directives were presented to Taylor.

**09 January 2008**

¶83 *"Dr. Michael, I read your posting to students regarding the "assignment crunch." I am neutral regarding the deadlines, as the "crunch" was anticipated for this truncated winter semester. However, my concerns regarding the course are the following: Although most students do participate in the BlackBoard Discussions, we may be uncertain as to progression, in terms of grading for this section. At times, I do not receive any feedback. Moreover, in one situation, I only received the comment, "Hawaii sounds wonderful!!!!" I would like to know how to, if necessary, improve my performance in Discussion postings, rather than continue with the status quo, as thus far, I've received a poor score* for my resource paper. It is my goal to learn as much as possible from this course, and improve my understanding as to what may be expected for a grade of an "A." Eugenna Taylor." This communication was followed by an in-person meeting with Dr. Michael. Dr. Michael's met with Taylor and cited that *"you are an average student"* . . . *"you must learn to accept that."*

**29 April 2008**

¶84 Allan, Robins, Mech, Eddy, Orlin, Morton and other University representativesare liable per (1) their personal involvement in the constitutional deprivation and / or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Moreover, the University's police states, "The Associate Dean for Academic Affairs will make the ultimate decision regarding the student's continuation in the clinical area of any conditions placed on continuation. Excerpts from a letter by Meryl L.K. Eddy, University Counsel states: *Dear Mr. Rhodes: This letter is to confirm the details of our telephone conversation last evening. The investigation contact information set forth in Ms. Robins' April 22 letter had to be modified as we learned that Major Sawyer is not an employee of the University. Consequently, Ms. Taylor's sexual harassment complaint is being sent to Ms. Tricia O'Neill, UMB Office of Academic*

Affairs and to Assistant Professor Ann Mech, UMB School of Nursing who will jointly conduct the University's investigation. . . . .Sincerely, Meryl L.K. Edddy University Counsel Cc: Karen Kaufman, Irma Robins, Tricia O'Neill, Ann Mech."

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

¶85 The above letter, reflecting course NURS 511) is later followed by the University's enforcement to dismiss Taylor for the University, which was procedurally and substantially unreasonable. In short, on 19 November 2008, Complainant was dismissed from course NURS 769 Societal Justice. The University cites Taylor's speech bordered on explicitly insulting, yet in light of a non-public forum, Taylor expressed herself in speech and view-points that were reasonable, neutral, and without sexual and/or racial overtones. The consequence of the University's actions results in Taylor being forced to miss 4 weeks of class and preferential mistreatment in the issuance of grades for course NURS 769. Dr. Johnson, instructor for NURS 769 falsified Taylor's grade.

¶86 There are distinct parallels, and yet, schisms per course NURS 511 and NURS 769 activities. A few key parallels are as follows: In both NURS 511 and NURS 769, the University prevented the Complainant from completing the last few weeks of the remaining semester. The Complainant is vocal regarding adverse and inappropriate actions regarding course instructors' behaviors, grade assignments and/or the University's decision to withhold the determination of grades. The University claims the Complainant engaged inappropriate presentation, and/or behavior that borders the peripheries thereof, without sufficient cause to remove the Complainant from integrated learning environments free from harassment in courses NURS 511 & NURS 769. The University issued inappropriate remedial- and /or race-conscious- measures to justify acts.

¶87 Conversely, there are predetermined, deliberate, and impacting schisms in the issuance of grades for NURS 511 and NURS 769. For one, the Complainant missed 4 weeks of NURS 769 during the later part of fall 2008. Rather than assign a grade of "D," as in the case with NURS 511 course grade, the University intentionally circumvents a noticeable pattern of unethical practices by issuing the Complainant a grade of "C." Per review of accompanied attachments, the Complainant's calculated grade for NURS 511 reflects a calculated "C" grade; yet, this grade is remarkable below average grades received by her peers and a "D" grade remains on Complainant's transcript.

¶88 Notwithstanding the previous indications, the Complainant's NURS 511 paper and presentation was graded by a non-clinical instructor, Dr. Mary Haack, and without peer evaluation and influence of grades, as with other CNL 511 students. Concomitant to the irregularities, Dr. Haack's "invite" to grade the paper and presentation was unbeknownst to the Complainant. Dr. Haack joined the presentation group at the time the Complainant was scheduled to present; Dr. Haack is removed from the engagement immediately after the Complainant completed her presentation.

¶89 Dr. Haack manipulates records by citing remarks on the Psychiatric Mental Health Nursing, NURS 511 Clinical Presentation Evaluation, indicating the Complainant may have and/or otherwise included/precluded "sexual abuse. ..paper . . .prostitution. . .presentation?" The Complainant paper, a detailed account of the paper, does not indicate and/or reflect issues of prostitution and etc. Per Dr. Haack's peculiar comments and grades, the Complainant attempts speak with Dr. Haack regarding grades and nebulous remarks, Dr. Haack is conveniently unavailable and the Complainant is redirected.

¶90 The University indicated that it was unnecessary for the Complainant to take the final exam and complete the remaining NURS 511 clinical rotations, as the Complainant supposedly failed NURS 511; yet, the Complainant was issued a final grade of D for course NURS 511 in July 2008, pending the outcome of the University internal investigation regarding complaints against Major Sawyer. Prior to July 2008, the University issued the Complainant a NM (No Mark) for NURS 511 and attempted to coerce the Complainant to refute the course grades through use of the University Capricious Grading Policy, which in fact was inapplicable to a litany of intentional retaliatory acts, and had marginal impact, if any, on the surrounding and/or direct matters of concern. Stated simply, the Complainant grades were assigned deliberately and were in retaliation to Complainant's grievances.

**29 April 2008**

¶ 91Letter from University of Maryland, Baltimore, dated 29 April 2008; from Meryl L.K. Eddy, University Counsel

*"Dear Mr. Rhodes: this is to confirm the details of our telephone conversation last evening. The investigation contact information set forth in Ms. Robins' April 22 letter had to be modified as we learned that Major Sawyer is not an employee of the University. Consequently, Ms. Taylor's sexual harassment complaint is being sent to Ms. Tricia O'Neill, Senior Advisor, UMB Office of Academic Affairs and to Assistant Professor Ann Mech, UMB School of Nursing who will jointly conduct the University's investigation. Ms. O'Neill and Assistant Professor Mech will contact Ms. Taylor in order to investigate her allegations. As part of their investigation, they will interview the accused, witnesses, and Ms. Taylor. After a thorough investigation, they will be in touch with Ms. Taylor again. A report with recommendations will be provided to the Dean of the School of Nursing. As Ms. Robins mentioned to you last week, the University takes allegations of sexual harassment very seriously. As we discussed, Dr. Kauffman is the Chair of the Department of Family and Community Health and the person with whom Ms. Taylor should be communicating. It is my understanding that Ms. Taylor has still not arranged to meet with Dr. Kauffman despite her repeated requests that she do so. The e-mail contacts that Ms. Taylor has made with Dr. Kauffman are short and confusing, emphasizing the need for the Chair to meet personally with the student to make the final alternative arrangements for this clinical course. Via e-mail, Ms. Taylor has rejected many of Dr. Kauffman's suggestions and seems to not understand course requirements that need to be satisfied completely within an ever-shortening time frame in order to keep Ms. Taylor on a satisfactory academic track at the School. . "*

**12 August 2008**

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

¶92 *"Dr. Kapustin and Kauffman, As a result of our meeting today, you did not allow me to register for fall 2008 classes per my having cited a request for an external investigation with the Office of Civil Rights. Today you've presented the attached document dated 18 April 2008. This was the first time I've viewed and/or have known about the document and its false contents. I have cc: the letter to other Administrators with hopes of continuing my studies in fall 2008. Eugenna Taylor."*

**19 August 2008**

¶93 University official writes: *"Dear Eugenna, I have had an opportunity to speak further with the staff members of our center who are in charge of our web based activities and they have informed me that they would not be able to provide the additional hours this quarter to support the project we had discussed. For this reason I'm afraid we will not be able to work with you on your independent study project. Thank you for your interest and I wish you every success in identifying a worthy project.*
*Jeffrey V. Johnson, Ph.D. Professor and Director, PAHO/WHO Collaborating Center for Mental Health*
*Member, Work and Health Research Center (WHRC) Department of Family & Community Health*
*University of Maryland School of Nursing 655 West Lombard Street Baltimore, Maryland 21201-1579*
*PAHO/WHO Office: Suite 480; 410-706-0185 WHRC Office: Suite 655(B); 410-706-0799*
*Cell phone: 410-733-7012 Fax: 410-706-0253 email: jjohnson@son.umaryland.edu home office email: jvjohnson@verizon.net WHRC Center website: http://nursing.umaryland.edu/excellence/whrc/index.htm "*

**20 August 2008 11:34AM Re: Clinical & Immunization**

¶94 University notes: ". . . There is also a list on the s drive that has been available since April that lists all students who must update their immunization or CPR for the Fall 200 semester."(Note: Violation of the HIPPA and Subtitle of the Annotated Code of Maryland).

**20 August 2008, 11:54 AM: Re: Clinical & Immunization**

¶95 Complainant writes, *"I couldn't access the student list for CPR and/or immunization updates on s-drive. What is my status and/or needs for CPR?"* (Note: The Complainant did not request the University to disclose her immunization status in a medium, whereby others are able to access confidential medical status).

¶96 Per the coordinates of time and place, Taylor responded by resubmitting the item of interest. Taylor notified the University, verbal and in writing, that she remain complainant and satisfied the tuberculin test requirements, as she was working at the VA Baltimore Medical Center, a teaching-institution affiliated with the University. Notwithstanding the University's knowledge of Taylor's relationship at the VA, a physician at the Center faxed two forms regarding Taylor's tuberculin test result, and Taylor mailed copies of results to the University.

¶97 The bottom-line: The Complainant's PPD fax was successfully transmitted and received by the University. Regardless of whether the University had ample human resource to address in-coming fax to prevent its loss and/or ensure it was received, liability remains with the University. The University failed to demonstrate reasonable care and risk management of critical and sensitive items of nature. This includes, but not limited to, exercising reasonable action and equipment maintenance and/or inspections required for normal business operations. It is not the Complainant's responsibility to ensure the University is current on equipment maintenance (i.e., fax machines).

**9 September 2008 7:53AM.**

¶98 Barbara A. Galliard (tele: 443-364-5584) of Sheppard Pratt e-mail notes: "This is to confirm that Eugenna Taylor showed up at Sheppard Pratt at Ellicott City on Thursday, September 4th at 7:00 AM. The University of Maryland students are scheduled to begin on Thursday, September 11." (Note: Complainant remained at Sheppard Pratt for several hours, waiting for clinical).

**9 September 2008 12:40 PM: Re: Thursday Clinical Orientation-1**

¶99 "_______(redacted) reported that you missed your September 4th clinical orientation at Sheppard Pratt without explanation or excuse. This is unprofessional behavior. To avoid an undue burden on the clinical site you must attend a make-up orientation on September 11th at 8AM as specified in the notice from _______ (redacted). "

¶100 It is unequivocally clear that based on correspondences dated 09 Septemeber 2011, the University lied.

**11 September 2008 6:13 AM.**

¶101 E-mail correspondence to University Helpdesk – "I have not been able to login to Blackboard. The system states I do not have access authorization." (Note: The University continued to manipulate the student's electronic registry and/or access (i.e., BlackBoard student accounts, registration, and etc.).

¶102 Taylor asserts that the University specifically barred her from access to educational resources and comparably equal privileges.

**11 September 2008**

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

¶103 In letter dated 11 September 2008, the University retaliates against the Complaint by dropping the Complaint out of NURS 511 in lieu of issuing an I (Incomplete); thereby, impacting the Complaints scholarship agreement, financial obligations, student status among other items. These adverse actions were employed, despite the Complaint having expressed concern for the aforementioned to the University President, Dr. Ramsay, as well as, other University staff.

¶104 The University's 11 September 2008 document references that the Complainant will be given the opportunity to retake NURS 511 during spring 2009. This opportunity was denied. The University lied.

**28 October 2008**

¶105 Maryland Higher Education (MHEC) Memorandum dated 28 October 2008 to Eugenna Taylor, from Elizabeth Urbanski, Associate Director Office of Student Financial Assistance; RE: UMB's Confirmation of Credits Fall 2008

¶106*"This memo is to confirm that the University of Maryland, Baltimore certified on the Fall 2008 Billing Roster that you are enrolled for 9 credits. Your Graduate Nursing Faculty Scholarship was processed in the Amount of $4,498, which our office awarded to you on the basis of you being enrolled for 9 credits. Your Graduate Nursing Faculty Living Expenses Grant is now being processed in the amount of $12,500. It is expected that the Comptroller's Office of the State of Maryland will process and deliver the check to you in approximately four (4) weeks.*

**10 November 2008, 2:05 PM**

¶107 Taylor is a subject of recurrent abuse, intimidation and harassment practices. The University induced another under the color of law / official right to intimidate. On 10 November 2011, Taylor received a hand-written note from the University's police, Detective / CPL D. Boone. The note stating:

¶108 *"Not allowed in BLDG without permission."*

¶109 Taylor recalls 10 November 2008 as follows: On November 19, 2008 (~1:57 PM) I entered the School of Nursing Building and presented my school identification card to Security Officer Ms. L. Lea. This was in the presence of Mr. Tom Fahey, Director of Facilities Management. Ms. Lea informed me that I was not allowed in the building. I asked for an explanation, and she handed me a letter dated 17 November 2008; this letter was displayed in the presence of Mr. Tom Fahey. I indicated that I would like a copy of this letter. Shortly thereafter, Corporal Joseph Blackwell and Detective Corporal Daniel Boone arrived (Corporal Daniel Boone was very intimidating; based on his appearance; he stood over 6 feet tall and well-built/muscular). I indicated I would like the names of the persons as a witness that I would not permitted to enter the building. Names were provided. Detective Boone kindly provided his copy of the letter from Dr. Janet Allan dated 17 November 2008 and inscribed the time, date and details of the situation (please review the attached document). During the interim, I notice Ms. Evette Lesecne (I'm uncertain of the spelling of Ms. Evette's last name), my classmate in course NURS 769, and requested that she submit a hardcopy of my NURS 769 assignment to Dr. Johnson on my behalf. This assignment indicated paper/presentation #2 topics of interest.

**22 November 2008**

**¶110** *"The e-mail of 11/21/08 sent at 11.37 am is the only correspondence other than re-sending the Letter that you received by e-mail on 11/20/08 2.15 pm I corrected the spelling of your b name. The rest of the letter remained the same. Janet Allan."*

¶111 University represents knew with substantial certainty that severe emotional and / or physical distress would be inflicted upon Taylor. This is primarily due to Taylor repeatedly requesting, both verbal and written, for the abuse, neglect, injury, harm (i.e. retaliation, harassment, and intimidation practices to stop. The University was willfullly blind to Taylor's pleads.

**Fall 2008 CONTRACT**

¶112 Unilateral changes to the Complainant's *contract* for CNL Independent Study results in a material change and conditions of the assignment towards the later part of fall 2008 semester. There is evidence that the Complainant was responsive and expressed concern and concern regarding assignment changes. The University did not indicate to the Complainant and/or otherwise those assignments, and/or the changes thereof, were to be addressed by close of semester fall 2008 to successfully pass and/or complete the requirements for the course. Timing of University's changes constitute at minimum, not only a material change to the terms and conditions of the assignment, but logistical time-dependent constraint on the Complainant's production of a quality paper. Technically, the Complainant was not enrolled in the CNL Independent Study course per this technicality and oversight by the University. The University should not be exonerated from the duty of proper and timely advisement, and/or further instruction/supplying and/or directing the Complainant with the necessary materials to complete and secure documents necessary for registration and/or course enrollment.

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

¶113 Contracts are presented in explicit terms and agreed by parties involved prior to fall 2008 registration. The *contract* presented to Taylor fails to be enforceable. More specifically, the *contract* presented failed to cite the terms and conditions for Taylor's assignments, and lacked definiteness in terms of not only for what is required but expectations in essential terms, required time-lines for paper submissions, closures, grading algorithms, as well as, any dates set for issuing course grade. Moreover, the *contract* lacked mutual assent to which the instructor and the student expressly made known, and lacked appropriate signatures by charging parties and / or authorized agents to acknowledge all the terms and conditions necessary. Consequently, Taylor reasonably believes that the University, purposefully offered to "facilitate acts" with ill will towards Taylor. Prior to course registration, Goodwin engages in conversation with Taylor, Goodwin citing , "Don't worry, I know her (Dr. Kapustin) well" . . . . "I like her" . . . . "she's cool with me." With that said, and the evidence present, Goodwin knew or should have reasonably known that presenting an unilateral *contract*, particularly close to the end of fall semester 2008, would present extreme and/or difficult time and resource constraints for Taylor; nonetheless, Taylor was issued a F grade for CNL Independent Study, a course not required for her degree requirements.

**05 December 2008**

¶114 University of Maryland, School of Nursing, from Jane Kapustin, Ph.D., CRNP writes:*"Dear Ms. Taylor: This is to inform you that allegations of academic misconduct related to course NURS 679 in which you were enrolled fall semester 2008 have been made against you. The allegations involve unprofessional conduct and violations of the School of Nursing Code of Conduct. A Judicial Board pre-hearing involving this matter has been scheduled for Tuesday, December 9. 2008 at 3 pm in room 503 at which time you need to appear before the Board. The Judicial Board process is outlined in the Judicial Board Procedure which is available online at www.nursing.umaryland.edu. Sincerely, Jane Kapustin."*

**On 23 January 2009**

¶115 Dean Janet Davidson Allan addresses a letter to Dr. Orlin citing:*"After extensive review following consultation with academic leaders in the SON, I have concluded in my best professional and academic judgment that Ms. Eugenna Taylor is not qualified to progress further in the graduate Clinical Nurse Leader (CNL) Program and should be dismissed. My opinion is based on Ms. Taylor's deteriorating overall academic record, as well as her failure to meet the technical standard the program, with or without reasonable accommodation. Ms. Taylor has recently continued that she does "not have any ADA claims (i.e. disabilities).*

**26 January 2009**

¶116 from Malinda Orlin; To: Taylor; Cc: Janet D. Allan: *"Dear Ms. Taylor, I write to inform you that based on the recommendation of the School of Nursing (See attached letter from Dean Janet Allan dated January 23, 2009), you are dismissed from the University of Maryland Baltimore Graduate School Clinical Nurse Leader Program effective immediately. Your record will indicate that you have been "academically dismissed." You are not registered and may not attend classes or clinical placements. If you wish to appeal your academic dismissal, as per Graduate School Policy on Appeal of Academic Dismissal, you have 10 working days to file your appeal. The deadline for filing the appeal is close of business, Monday February 9. 2009. If you wish to discuss the appeal process, you may contact Dr. Erin Golembewski, Associate Dean Graduate School, at 410-706-8323. Sincerely, Malinda Orlin, PhD., Dean, Graduate School. Attachments: Letter Dean Jan*

**26 January 2009**

¶117 *"Ms. Taylor, This letter will serve as written notice that your Housing License for Pascault Row Apartment 657-41G is being terminated by the University of Maryland, Baltimore ("UMB"). You must vacate Apartment 657-41G no later than 2:00 pm on Tuesday, January 27, 2007. Please remove all of your personal belongings and return your apartment key, mailbox key, and UMB One Care to the UMB Residence Life Office at 518 W. Fayette Street, Baltimore, MD 21201. The reason for this termination is as follows:*

- *The UMB Residence Life Office has been notified that you have been dismissed from the Graduate School*
- *See page 2, section 11 of the Pascault Row Apartment Housing License 2008-2009 "Termination"*
- *According to the terms of your Housing License, you must vacate the Apartment within 24 hours of termination by UMB.*

¶118 *"If, for any reason, you fail to vacate by 2:00 pm Tuesday, January 27, 2009, your electronic building access will be terminated, and the locks on your apartment will be changed. As of this time, the University will not be responsible for your personal belongings and you will need to make arrangements through the Residence Life Office to retrieve these items. "If you have any questions regarding this matter, contact the Residence Life Office at 410-706-7766. Sincerely, Nicole M.Miskimon, Assistant Director, Auxiliary Services CC: Irma robins, University Counsel; Chief Cleveland A. Barnes, UMB Police; Malinda Orlin, President for Academic Affairs / Dean, Graduate School"*

¶119 Taylor had reasonable fear that the University, and more specifically, Dean Allan would immediate find means to "throw her out-on-the-streets" and they / she had means of doing so.

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

¶120 Repeatedly, the University characterized Taylor as unworthy of credit, unworthy student, unworthy of trust, and unworthy to qualify. The University acted to intent to injure and punish Taylor. On 26 January 2009, Taylor was deemed unworthy to remain on campus.

¶121 As in previous semesters, summer 2008 and spring 2009, the University's pattern to deny the Complainant of resources and/or matriculation in the CNL Program is marked. Based on records, Title VI of the Civil Rights Act of 1964 is evident. On 22 January 2009, the University cites for the Complainant to adhere to a remedial plan and a face-to-face meeting, one day after the commencement of spring 2009 in-class sessions. The Complainant requests several times in advance to view the remedial plan prior to the specified meeting date. The University refuses the Complainant's requests. On 22 January 2009, the University offered an inappropriate and widely tailored remedial plan and that failed to achieve any legitimate purpose and/or necessity. This plan appeared to offer a non-discriminatory purpose, yet to the contrary, the plan reflected the University's adverse motivation and compelling interest, at minimum, to purposely misrepresent, falsify, and discredited the Complainant's racial and sexual harassment claims, academic records, and character. The remedial plan asserted through a series of defamatory statements and records, that the Complainant was behaviorally and academically unqualified to receive the Maryland Higher Education Scholarships and Grants, continue her matriculation at the University, and thereby, purposefully limiting the number of African-African scholarship recipients and/or future teacher at the University and/or other institutions of learning.

¶122 The University's judgments and actions did not constitute a sufficient cause for Taylor to be dismissed from school and/or participation in the University's appeal process. In January 2008 a compensatory mechanism was offered. The University offers Taylor a motion to appeal dismissal from the University. Taylor exercised her write to appeal the dismissal and indicated the necessity of filing a lawsuit. Taylor's appeal was submitted to the University. The University failed to properly acknowledge and take actions relevant to the appeal, refused to engage Taylor's motion to appeal at the University, and thereby, the University continues to deny Taylor from federally funded University resources and possibly benefit from the University internal appeal process in concert with Taylor's decision to pursue other forms of legal action.

**CLOSING REMARKS**

¶123 The facts set forth in this document establish a direct, if not causal link, between the alleged wrongdoing and claims submitted to the government for continued financial benefit. Characteristic examples illustrative of fraudulent scheme involve a dissembling, complex and far-reaching scheme to increase federal subsidies and continued issuance of state loan programs, while and when applicable, to deny students' constitutional / civil rights claims.

¶124 The determination for this case is perhaps one of several steps to engage in collective initiates to appropriately respond to the University's orchestrated assaults against Taylor and governments, and to deter future egregious acts. This case represents a landmark case regarding a particular federally protected class, and demonstrates that an entity (i.e. the University) was willing to abuse the distribution of federally / state funded provision and resources while masking assaults on a protected class well beyond legal and / or ethical parameters. This includes, but not limited to the University's conspired and stand-alone intentional and purposed manipulation of grades, registries and /or accounts to produce a predetermined distribution and select population of students to be harmed through the University's coercion, actions in altering students' academic matriculation, retention of scholarship and / or grant monies, as well as, violate constitutional / civil rights., yet perhaps more disturbing, to ensure the continuity of *kickbacks* in the form of tenures, contracts, professional upward mobility and reciprocated acts of favor.

¶125 From 2007 and to date, Taylor continues to be severely crippled by the University's continued wrongful conduct. As such, the conduct materialized a continuing nexus to the specific harm Taylor suffered. In 2009, Taylor endured periods of homelessness, transient and otherwise (i.e., extended periods of homelessness), and frequently lived in her 2001 Toyota Corolla that was impacted in 2008 automobile crash and in need of maintenance and / or repairs. To date, repair needs remain outstanding. Living in her automobile, Taylor is without the convenience of basic amenities such as a toilet, shower, refrigerator, stove, and exposed to extreme temperatures and undue risks. Taylor's situation continues to be confounded by her deteriorating and / or capricious health status, periods of unemployment and / or "temporary" / low-wage employment which enforced a peculiar form of physical and economic restraint, exacerbated financial crises, limited political power, uncertainty and unreasonable risks of harm. During periods without adequate food, gasoline for travel, and telephone to communicate with law enforcement and otherwise, psychological terror and marked physical challenges accompanied Taylor.

¶126 Taylor asserts that the University's conduct was extraordinary in manner, and characterized and / or accompanied by fraud, malicious intent, wantonness, reckless disregard for Taylor's well-being. As such, Taylor's suit and supportive documents exemplifies the degree of culpability exhibited usually imposed in cohort. In furtherance of her claims, Taylor relies on the testimony of expert witnesses / opinions from one or more sources: (1) treating physician, (2) presentations at trial and (3) presentations of data outside of court. As such, Taylor requests that the court allow Taylor to testimonies of expert opinions / witnesses, essential to Taylor's claim, at a future date.

¶127 Collectively, Taylor seeks $9.2 million in punitive damages, approximately $900,000 in compensatory damages, excluding entitlements for relief per the United States False Claims Act and Maryland False Health Claims Act qui tam provisions. Taylor notes that summary

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

judgments may be appropriate for punitive and compensatory damages per "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Eugenna Aileen Taylor
Signature
Mailing: PO Box 241 Waldorf, MD 20604
Telephone Numbers: 404.542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

not including evidence
12 of 12