IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 NOV -7  P 3: 23

CLERK'S OFFICE
AT GREENBELT

BY                    DEPUTY

EUGENNA AILEEN TAYLOR (*pro se*)
P.O. Box 241
Waldorf, MD  20604

       Plaintiff       :


v.


UNIVERSITY OF MARYLAND, BALTIMORE
655 West Lombard Street
Baltimore, MD  21201
MARY HAACK
ANNE MECH
IRMA ROBINS
JEFFREY JOHNSON
JANET DAVIDSON ALLAN
JANET KAPUSTIN
KRISTIN BUSSELL
THOMAS SAWYER
MALINDA ORLIN
CONRAD GORDON
GAIL LEMAIRE
JOAN DAVENPORT
JANA GOODWIN
TYREE MORRISON
MELANIE BAZENSKY COFFMAN
DAVID RAMSEY
SUSAN GILLETTE
WILLIAM E. KIRWAN
JOHN DOE(s) of HOWARD COUNTY COMMUNITY GENERAL HOSPITAL in their individual and / or official capacity as members of Howard
    County General Hospital
        57 Cedar Lane Columbia, MD  21044
JOHN DOE(s) of BLUECROSS BLUE SHIELD
        100 S. Charles St. Baltimore, MD  21201
JOHN DOE(s) of STATE OF MARYLAND
        200 Saint Paul St. Baltimore, MD  21202
JOHN DOE(s) of Maryland Board of Nursing
        4140 Patterson Ave.  Baltimore, MD  21215-2254


       Defendant      :


Eugenna Aileen Taylor
Signature: _____  07 Nov. 2011
Mailing:  PO Box 241 Waldorf, MD   20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

## INTRODUCTION

¶1 I, Eugenna Aileen Taylor (i.e, the "Relator," "Complainant," or "Taylor"), state the following in true and correct to my knowledge, belief and/or accumulative evidence documents.  As such, the Relator pleads that she is entitled to relief per the United States False Claims Act and Maryland False Health Claims Act, and has filed this civil action (qui tam) to recover damages on behalf the government.  Otherwise, per notice of pleadings (i.e., Federal Rules and Court Procedures ("Rule") 8(A)(2) and Rule 18, I cite additional claims and request remedies to which the law may entitle Taylor.

¶2The Realtor files duly, in state and federal courts, and kindly requests courts to allow her the option to later separate, amend, and re-file *qui tam* from that of non-*qui tam* and / or contract breach claims, with select *qui tam* documents possibly redacted in-full and / or in-part.  More specifically, Complaint kindly requests the court to 1) accept amendments, disclose further narratives, and provide additional evidence at a future date (tentatively, Taylor estimates within 21 days from 20 October 2011, but request that additional documents are accepted at time beyond the 21 day period from 20 October 2011), per unusual circumstances / resource constraints / forced "disability", and 2) seal documents filed 20 October 2011.  Filings made under the seal are in concern for her safety, as well as, the nature in which justice may further pursue.  More specifically, the Realtor requests that her name and / or unique identifiers, per this *qui tam* action, remain undisclosed to the public, indefinitely.

¶3 Taylor has amended / supplemented this suit, originally filed 21 October 2011, for review and submission to the court on 7 ~~October~~ 2011.  Taylor would like to add additional information after filing date, 7 ~~October~~ 2011 for review; however, per extreme circumstances, she is uncertain whether this may be immediately practical, and / or feasible.  As such, Taylor requests for an extension 30 days from 7 November 2011, to submit amendments / supplements / separate filings, as this case impact aggregate populations.

### Realtor Background

¶4 The Relator, in this *qui tam* (civil) / tort case, is an African-American female, of relatively fair color, and with national origins reflecting South Korea.  Per Taylor's favorable of character, habit, academic achievements and routine practice, she has been awarded the Office of Naval Research Scholarship and Reagents Scholarship to complete her Bachelors of Science and Master of Business Administration degrees from Clark Atlanta University and Augusta State University Hull College of Business, respectively; merit evaluation and awards are enclosed. Other scholarships / awards received are as follows:  Bermuda Biological Station for Research (now known as Bermuda Institute of Ocean Science), University of Notre Dame CANDAX McNair Scholarship, American Geological Institute Scholarship, Yale University Department of Chemical Engineering & Catalysis (summer research scholarship), and an acknowledgement in *the Journal of Palliative Medicine*.  While matriculating at a number of educational institutions, Taylor was accustomed to studying / working concurrently at one or more establishments, namely the Medical College of Georgia, Morehouse School of Medicine, several posts at Emory University, and various federal agencies:  Substance Abuse & Mental Health Administration, VA Palo Alto Health Care System, VA Central Office in Washington, D.C., and the Centers for Disease Control & Prevention.

¶5  From approximately 2005 – 2007, Taylor invested substantial time / money at Anne Arundel Community College to complete prerequisite courses for the University CNL Program.   From 2005 and to date, nearly 6 years have passed and Taylor has not working in her professional field of study – registered nursing.  This is in consequence to University's continuing nexus of wrongful conduct directed at Taylor.

¶6  In 2007, Taylor was accepted at the University, an institution well known for a history of discriminatory practices. Taylor enrolled at the University expressly for its CNL Program and to eventually become a forensic psychiatric nurse.  The University's Co-Directors, Lemaire and Davenport, of the CNL Program and other key Administrators were made aware, verbal and/or written Taylor was in need of financial assistant to support her University studies and that her career interest encompassed psychiatric nursing.  Denied private loans, and aware of only few thousands of dollars available from Stafford loans, Taylor on several occasions, consulted with Davenport and Lemaire, and sought work, either as a University graduate assistant, researcher, or become the recipient of scholarship monies, while matriculating through the CNL Program.  She was repeatedly denied scholarships, employment and graduate assistantship positions at the University for reasons the University often claimed that the level of research skills required at the University was *exceptional* to that of Morehouse School of Medicine and Clark Atlanta University, both historically black universities and colleges.  Yet, the University's insults did not deter Taylor's quest to pursue studies at the University.

Eugenna Aileen Taylor
Signature:
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

¶7  In 2007, the Complainant was eventually awarded support to complete her graduate nursing studies at the University. She received nearly 100 percent of financial support through the Federal Student Loan Assistance, Maryland Senatorial Scholarship, and Maryland Higher Education Commission Graduate Faculty Scholarships and Grants.

¶8  The Complainant maintained a grade-point-average (GPA) of ~ 3.5 in fall 2007 and winter 2007/2008 academic semesters, while maintaining a full graduate course load, customarily 16 credit hours per semester and was a candidate for the CNL/MS/RN degree in fall 2008.

¶9  Following the Complainant's formal and written grievance to the University regarding sexual and racial harassment, as well as, expressed concern for course grade during Winter 2007/2008 semester, the Complainant's GPA plummeted below 3.5 in spring 2008, and thereafter.  This was a direct consequence of the University's retaliation against the Complainant.  In furtherance of their multi-tiered scheme, the University breached the integrity of Taylor's student account records, engaged in fraud, and disputed the merits of her character and claims.

¶10 In 2008, the Complainant's decision to exercise formal grievance channels and call the attention of state and federal agencies precipitated the University to engage in sustainable efforts to mask the Complainant's racial and sexually harassment claims.  Taylor continued to cite related and/or similar grievances, thereof.  As a result, the University not only continued to racially and sexually harass the Complainant, but elicited multiple novel and on-going ploys (i.e., psychological and racial profiling; subliminal messages delivered by psychiatric nurse practitioners/those with advance nursing experience/other University staff; directed verbal attacks, and on occasion, attacks were coupled with sexual gestures and etc.).  This was despite Taylor's pleads for the wrongful conduct to stop, noting that she was sensitive to inappropriate expressions relating to race, sex, color, national origin, as well as, intimidation practices, thereof.  Nonetheless, the University's wrongful conduct persisted with intentions to academically, financially, emotionally, and physically assault and/or exacerbate the Complainant's status, and thereby, deliberately compromising her well-being, future, and security.

¶ 11As a victim of fraud, discrimination, retaliation, harassment and intimidation practices, Taylor was expendable in the University's continued scheme to defraud the government and students.  As such, Taylor and her collection of documents were targeted to dismiss any civil and possible criminal proceedings.  In attempts to insulate themselves from liabilities, the University and co-conspirators made systematic efforts to attack Taylor's character, and conceal / selectively destroy any evidence in pursuit of favorable outcomes for the University.  From 2008 and to date, some of Taylor's collection of documents, stored at University campus apartments, and Public Storage facility located in Maryland remain missing.  On 18 September 2011, Taylor reported burglary at Public Storage to law enforcement officials, but to no avail. Missing documents, privacy invasions, and suspicious activity / injury (peculiar automobile accident during fall semester 2008, whereby Taylor's student health insurance was dropped) have been evident since 2008.

**23 January 2008**
¶12 Nichole *Widerson, University Assistant Director, Auxiliary Services writes: "Hello Eugenna, As I walked past the Pascault Row apartments this morning, I noticed that you had left one of the windows of your apartment wide open.  I called our maintenance chief (and asked him to go to your apartment and close the window."*

¶13  Taylor, a member of a protected class, asserts that at minimum, there is causal connection between the protected activity and the wrongful dismissal / termination.  Opposing activities that violate Titles VII, VI, IX, slander, libel, constitutional rights, fraud and etc., she notes that causation has been established per the University's knowledge of Taylor's protected status, as well as, Taylor's engagement in protected activities.  Furthermore, records indicate that protected activities were in close proximity to the University's adverse actions against Taylor, which may be construed, as causation-in-fact.  Adverse actions include but not limited segregation, disadvantageous transfers and /or assignments, unwarranted negative evaluations, manipulating student records, slander, libel, harassment, and intimidation practices. Continuous causal (sufficient) links include but not limited to, the University stating and with chuckles, "all we have to say is that these were mistakes" – a foray to cruel and unusual punishment, as Taylor continues to exist with substantial risk of harm and imminent dangers.

**CAUSE of ACTION**

¶14 Defendants listed in this suit are responsible for their individual, public, and / or official capacity as members of the University of Maryland, Baltimore and / or otherwise, and are believed to be closely associated in official duties, organizational memberships, business and/or personal associations.  Taylor states clear, simple and direct legal causes of action with pleadings reflective of general and / or special damages, personal injuries and physical suffering, loss of income, impairment of earning capacity, loss of / or damage to property, punitive damages, and *qui tam* Realtor entitlements.  Taylor seeks treble, compensatory and / or punitive damages for the following:

¶15 Maryland False Health Claims Act ("Act"), codified from section 2-601 to section 2-611 of the Annotated Code of Maryland.

¶16 False Claims Act 31 U.S.C. §§ 3729 – 3733; Relator is entitled to percentage of monies recovered by the government.

Eugenna Aileen Taylor
Signature: _____  07 Nov, 2011
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113;  Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

¶17 Title VII Section 219 (2) (d), the University and/or affiliates are vicariously liable for harassment and knowingly engaged in unreasonable deferrals, and fraudulent misrepresentation and / or concealment of facts to deny Taylor's claims

¶18 Title VII of Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex and / or national origin (RCRSN), as well as, practices that have the effect of discrimination per RCRSN. *** Per the Maryland Human Relations Act, Taylor intends to file (state) employment discriminations with the Maryland Human Relations Commission.

¶19 Per Title IX of the Education of Amendment of 1972, the University is liable, vicariously and otherwise, for Thomas Sawyer and other University representatives

¶20 Title 42 U.S.C. §1983

¶21 Civil Rights Act of 1991 provides monetary damages for intentional employment discrimination

¶22 Under section 1983, University supervisors, are liable per their own acts / omissions, as the requisite causal connection has been established by a series of acts made by the University reasonable knew would cause and inflict the constitutional injury.  Supervisors acted, or failed to act, in a manner that was deliberately indifferent to a Taylor's Eight Amendment, civil rights and harassment allegations. This is sufficient to demonstrate the involvement and liability.  Select University officials are being charged for their own culpable action or inaction, rather than being vicariously liable for the cupable action or inaction of her subordinates.  Person of supervisory status, are liable in their individual capacity because they knew or should have known about the dangers, and that they were deliberately indifferent to those dangers. Taylor seeks compensation directly from those in supervisory capacity.

¶23 Constitutional discrimination. The Fourteenth Amendment asserts rights of due process and equal protection.

¶24 Exposure of Taylor's medical information violates the Family Educational Rights and Privacy Act of 1974, and HIPPA.  Compliant files a 42 U.S.C.1983 action as the University, as sensitive information may not be released.

¶25 Title VII prohibits intentional acts of discrimination based on race, color, religion, sex and national origin, 42 U.S.C §§§ 2000e-2(a)(1); §§ 2000e-2(k) (1) (A) (i)  (disparate treatment; disparate impact), as well as policies or practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities. Taylor seeks monetary compensation.

¶26 Code of Federal Regulations (CFR) Title 13 includes, but not limited to, regulations regarding a student's right to a hearing, and certain disclosures for federal programmatic purposes.  Taylor was denied this, and seeks monetary compensation.

¶27 Maryland Annotated Code, Education Article § 5-214 indicates, "the State Board is the educational authority for the expenditures and administration of those funds."  For more, Title 1091 (3) (a) (b) states, in order to receive any grant, loan or work assistance, "a student must be carrying at least one-half the normal full-time work for the course of study that the student is pursing, as determined by an eligible institution, and (b) is enrolled in a course of study necessary for enrollment in a program leading to a degree or certification." As such, Taylor asserts that she is entitled to recover money that the government paid to the University.  This may reflect remedies available via Maryland codes and / or the United States independent of statues, respectively.

¶28 Slander and libel (i.e., per se and per quod)

¶29 Contract breach

¶30 Infliction of severe emotional distress, intentional and otherwise

**TOLLING of STATUES**
¶31 Taylor believes statues have been tolled for at least one and / or more reasons: (1) Taylor has been want of due of diligence, with regards to causes of action against former officers at the University and relevant government representatives.  Notwithstanding the aforementioned, Taylor asserts that her situation has been severely confounded by forced "disability;" yet as practical, she has been diligent in pursuing remedies and wanting diligent prosecution of applicable matters.  Taylor continues to adversely affect economically, physically, professionally and emotionally.  Consequently, she has been placed in peculiar forms of unwanted restraint, (2) University attorneys, state, and representatives have a fiduciary responsibility to University students and the public. Counsel breached their known "legal duty" and acted with deliberate indifference toward the probability that deficient performance of duties / tasks may contribute to Taylor's civil rights deprivation. Furthermore, University Counsel members intentionally concealed their associations / memberships, board and / or otherwise, with organizations of immediate interest (i.e., Howard County Community General Hospital and etc.).  Counsel also denied Taylor's request for detailed compliant and investigation procedural policies / guidance, were aware of several University's verbal assaults directed at Taylor per

Eugenna Aileen Taylor
Signature: _____   07 Nov. 2011
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

numerous Cc: (Correspondence copies received and otherwise), and facilitated / encouraged University policies that may be deliberately crafted to prey on student who would be unlikely to defend themselves or individuals deemed politically powerless.  Moreover, per federal tolling statute, 28 U.S.C. Sect. 1367, the statute of limitations on state claims in federal court "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed."

**26 March 2009**
¶32 Irma Robins, University Counsel, writes: "Dear Ms. Taylor: I am writing in response to your e-mail to President Ramsay dated March 25, 2009.Following lengthy investigation, the U.S. Department of Education, Office for Civil Rights ("OCR") sent Dr. Ramsay a notice of determination regarding allegations the University discriminated against you on the bases of race (African-American) and sex by failing to address your complaints of different treatment, retaliation, and racial and sexual harassment by various University personnel. The Office of Civil Rights concluded each of your complaints was fully resolved."

**15 January 2009**
¶33 *"I spoke to the attorney and she advises you to go to the higher authority in your school to post your complaint – Registrars Office, etc.  It is not something our Division would handle.  Sorry we couldn't help you further.  Hope things work out for you. ~ Toni Monkrousos Administrative Aide Criminal Division"*

**11 June 2009 at 12:17 PM**
¶34 Taylor writes to the Maryland State Attorney General (To: amonokrousos@oag.state.md.us; oag@oag.state.md.us):  *"I have repeatedly contacted the State.  My complaints have been dismissed regarding several complaints, some of which are noted,Below.  I would like to know why the State refuses to acknowledge my complaints and / or reports.  1) The University of Maryland,Baltimore exposed my private medical data (i.e., HIPPA violations) and failed to secure my medical records.  2) The University of Maryland, Baltimore denied my accessing health services and other resources.  3) The University of Maryland Baltimore Representatives conspired to manipulate my student accounts, grades and etc. 4) The University Representatives conspired andBanned me from campus, campus housing, access to postal mail and etc.  I would like to know what actions will the StateInitiate to address the aforementioned."*

**11 June 2009 at 1:33 PM**
¶35 Taylor writes to the Maryland State Attorney General (To: amonokrousos@oag.state.md.us; oag@oag.state.md.us):  *"The State's denial and / or deferral to address my concerns / reports is unacceptable.  Deliberate neglect is unwelcome."*

**23 March 2010**
¶36  Taylor emailed Members of the Maryland Ethics Committee and Senators: John Astle; David Brinkley; James Brochin; Richard Colburn; Joan Canter Conway; Ulysses Currie; James DeGrange; George Della; Roy Dyson; George Edwards; Nathaniel Exum; Jennie Forehand; Bobby Zirkin; Lowell Stoltzfus; Norman Stone; James Robey; Jim Rosapepe; Bryan Simonaire; Richard Madaleno; Nathaniel McFadden; Thomas Middleton; "Mike" Thomas V. Miller; Alex Mooney; Donald Munson; Anthony Muse; Douglas Peters; Paul Pinsky; E.J. Pipkin; Catherine Pugh; Jamie Raskin; Edward Reilly; Katherine Kalusmeier; Rona Kramer; Mike Lenett; Brian Frosh; Rob Garagiola; Lisa Gladden; Barry Glassman; Larry Haines; David Harrington; Andrew Harris; Nancy Jacobs; Verna Jones Rodwell; Edward Kasemeyer; Delores Kelley; Allan Kittleman.

**31 March 2010**
¶37 *"Dear Ms. Taylor:  Thank you for contacting Governor Martin O'Malley regarding concerns you have with the University of Maryland, Baltimore.  Governor O'Malley has received your letter and has asked that I respond to you on his behalf.  Neither the Governor's Office nor the Maryland Higher Education Commission has the jurisdiction to address the issues you raised in your email.  Although The Commission is a coordinating body for higher education in the State, we do not have the authority to intervene in the management of campus affairs and academic policies of the institution.  I encourage you to continue to work with officials at the university to reach a mutually satisfactory resolution.  The Governor appreciates hearing from you, and on his behalf, I wish you much success as you continue to pursue your education.  Again, that you for sharing your concerns.  Sincerely, James E. Lyons, Sr. Secretary of Higher Education."*

**03 November 2010**
¶38 Taylor receives an email from Antony South, Executive Director, Maryland State Board of Education:  *"Ms. Taylor:  The Maryland State Board of Education has no authority to take action on your complaint.  You should direct your correspondence to the Board of Regents, University System of Maryland. . . . "*

**03 November 2010**
¶39 Eugenna writes to Dr. Kirwan: *"Dr. William E. Kirwan: The purpose of this letter is to request disciplinary action against Janet D. Allan, University of Maryland Baltimore School of Nursing Dean. . . . . Cc: Maryland State Department of Education , Maryland State Board of Education Members / Executives:James H. DeGraffenreidt, Jr; Charlene M. Dukes, Mary Kay Finan; Kate Walsh; Ivan C.A. Walks; Donna Hill*

Eugenna Aileen Taylor
Signature:
Mailing:  PO Box 241 Waldorf, MD  20604                     07 Nov. 2011
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

Staton; James Gates, Jr.; Madhu Sidhu; Guffrie M. Smith, Jr.; Luisa Montero-Diaz; Sayed Naved; Gayon M. Sampson; Nancy S. Grasmick; Tony South"

**05 November 2010**

¶40 Eugenna writes to Doyle and Madarang:  *"Good afternoon, I understand that Ms. Janice Doyle and Ms. Tina Madarang are Chief of Staff to the Chancellor (Dr. William E. Kirwan) / Secretary to the Board of Regents, and Executive Assistant to the Chancellor, respectively.  Kindly ensure that Dr. Kirwan reads and acknowledges an e-mail with subject heading: "ATTN: William E. Kirwan - Crime Involving Moral Turpitude, Requesting Disciplinary Action . . . ." This email was addressed to Dr. Kirwan (bkirwan@usmd.edu) on 03 November 2010, 3:26 PM. Thank you, "Eugenna Taylor"*

**18 July 2011**

¶41 Susan Gillette, Senior University Counsel at the University Maryland, Baltimore addresses a letter to Ms. Caroll G. Gonayre, Assistant Bar Counsel of the Attorney Grievance Commission of Maryland, stating:  *"I hope the Commission will promptly conclude that Ms. Taylor's complaints should be dismissed . . . "* Interestingly, Gillette Cc / copies the letter to Thomas Faulk, Esquire of the Office of the Attorney General.

**29 July 2011**

¶42 *"'Mr. Grossman, I am requesting 1) a disclosure of Attorney Grievance Commission of Maryland (AGCM) polices, if any, regarding communication restrictions, as well as, applicable date when these policies were made known to the public and/or enforced, 2) < per unusual circumstances> an exception to any policies with regards to communicating via email, 3) Ms. Donayre's Maryland bar number, 4) Ms. Donayre's tenure with the AGCM, and 5) specific detail with regards to how, when, and by whom are persons appointed to AGCM. Please itemize #5 with respect to each current AGCM member.  All replies should be sent to eugennataylor@yahoo.com AND via certified mail to PO Box 14782 Atlanta, GA  30324.  Thank you, Eugenna Taylor"*

**25 August 2011**

¶43 Taylor complains to the AGCMD regarding Caroll Donayre's communications to the University to provide legal advice and / or aid in the furtherance of the University's wrongful scheme to deprive Taylor's rights and cause additional injuries.  *"To date, the AGCMD remain non-responsive to my telephone and email communications regarding outstanding matters.  I have repeatedly telephoned the office to either speak with Mr. Grossman and / or Caroll Donayre; however, Grossman / Donayre remain "unavailable."  As such, notified the AGCMD secretary / telephone receptionist to 1) check the AGCMD email system, as I have sent electronic correspondences and 2) have Grossman to contact me via email, eugennataylor@yahoo.com, the only reliable method of contact at this time.  Eugenna Taylor"*

**September 2011**

¶44 Taylor visits the Office of the State's Attorney for Baltimore City 208 The Clarence M. Mitchell, Jr. Courthouse Baltimore, MD  21202, and speaks with Angela M. Gallagher, Assistant State's Attorney.  Gallagher states, *"without a police report, we cannot do anything."*

**09 September 2011**

¶45 *"At minimum, I have been adversely impacted economically, medically and professionally.  I have repeatedly requested information from Grossman et al; however, my request for specific, detailed and prompt information, particularly as it relates to communication policies and the enacted dates for policy implementation / enforcement, as well as, the status of my communication materials regarding my complaints.  Interestingly, and most recently, on 09 September 2011 at 11:03 AM, Mr. Grossman responds to my question:  "What is the communication policy (Eugenna Taylor)?" with "Because I said so (Grossman). Mr. Grossman, til I receive the Maryland Attorney Grievance Commission policy in written form, whereby, I may read and possess it, I will continue to utilize email as a primarily form of communication, per forced conditions; again, I have been adversely impacted.  Because I said so" is unacceptable, demeaning and unprofessional.  Eugenna Taylor  PO Box 241  Waldorf, MD  20604"*

¶46 (3) Taylor asserts that the University failed to take measures that would have made earlier injuries and harm less likely. Thereby, the University's conduct does not necessarily have to establish the University's admission, as conduct is equally consistent with Taylor's injuries due to contributory negligence and / or culpable conduct. (4) From 2008 and to date, Taylor has contacted several government representatives, including but not limited to legal aid organizations and political appointees, to seek appropriate intervention, redress, submittal of claims, and / or resolve, but with limited and / or no avail.  Officers of the court (i.e., lawyers, and state / federal representatives) have fraudulently presented the facts, provided unwarranted legal advice to one or more of the defendants and / or omitted critical facts so the official duties have been impaired in the impartial performance of legal tasks. (5) Moreover, at time in question (i.e., 2009), whereby, Taylor was subject to multiple adverse conditions (i.e., injured, without health insurance, legal representation, housing, receipt of income to support living and forced into a peculiar form of restraint); at present, one or more of the aforementioned concurrent "disabilities" have not been removed since 2009, the estimated date reflecting multi-retaliatory actions and the approximate onset.

¶47 The aforementioned list is not exhaustive; Taylor intends to elaborate and provide further evidence within 21 from file date.

Eugenna Aileen Taylor
Signature: _____   07 Nov. 2011
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

BARRED FROM EMPLOYMENT, SCHOLARSHIPS, GRANTS based on RACE, SEX, COLOR, NATIONAL ORIGIN,

**21 June 2007 10:38 AM**
¶48 Taylor (etayl009@umaryland.edu) writes to slbernst@umaryland.edu cc: amber453@aol.com: *"Hi Drs. Berstein & Koh. This letter is in response to the advertised Research Assistant position listed on the University of Maryland, Baltimore website. I've applied for the Research Assistant position sometime ago; however, I am uncertain if this position remains open. I have attached my resume for your perusal. Kindly forward my resume to the appropriate PIs/Hiring Managers that have interest in my background and experience. Thank you, Eugenna Taylor."*

**20 July 2007**
¶49 Eugenna A. Taylor writes from her email: etayl1009@umaryalnd.edu to Robin Newhouse; Johantgen. *"Hello Drs. Newhouse & Johantgen. Yes, I am actively seeking a Research Assistant position that provide the following: 1) tuition assistance, 2) a stipend and 3) health insurance. My situation is quite urgent, as I currently owe the University nearly $3000 this semester and have no means to pay for my living expenses. Classes will begin Monday, August 27th. Throughout my matriculation at UMD, I will reside on West Lexington St., which is located approximately 2.5 blocks from the UMD School of Nursing. Hence, on-campus position are ideal. If the Assistant position requires some travel, I do possess a car. I have several years of research experience, both bench and clinical. To date, my experience may be somewhat related to your (Dr. Newhouse) research efforts: 1) Veteran Health Central Office (DC) – Time is Life Cardiac Care Initiative, a national initiative lead by my mentor Major General/ Assistant Army U.S. Surgeon General, Marianne Mathewson-Chapman, Ph.D., RN, and 2) African-Americans & Advance Directives in an Urban Hospital Setting, as CHF with an ejection fraction of 30% or below, and Class IV criteria for the New York Heart Classification were one of several inclusion factors for the study. Thank you for considering my candidacy – eugenna."*

**20 July 2007 13:44:41-0400**
¶50 *"Hi Eugenna Dr. Johantgen was kind enough to let me know that you may be interested in an RA position for the fall. I am new to UMD – and am just transitioning in this month as Assistant Dean, Doctor of Nursing Practice, but will be here full time in August. I will have funding September 1 from RWJ for a 2 year project to conduct a Rural Hospital Quality Collaborative in heart failure care, and will be posting an RA position as soon as I hear the final word (around August 1), let me know if this sounds like something you are interested in . Robin Newhouse, Ph.D, RN."*

**12 September 2007 07:23:18-400**
¶51 *"Hi Eugenna – Let's meet at 3 on the 20th – Iam in 516B. Have you already applied for a Graduate Research Assistant position? Robin."*

**12 September 2007 7:48:12 AM**
¶52 *"Good morning Dr. Newhouse. Yes, I provided my application materials to the Scholarship Coordinator, Mr. Brian Walls. I look forward to meeting with you on Sept. 20th at 3 pm. Eugenna Taylor."*

**09 September 2007 18:47:03 – 0400**
¶53 *"Hi Eugenna – Let me know when you are available for an interview – I did get funding notice, so the position will soon be posted. Dr. Newhouse."*

**11 September 2007 10:26 AM**
¶54 Taylor wrote to Robin Newhouse: *"Hello Dr. Newhouse. My availability is September 20th, Thursday, post-1pm. Thank you, Eugenna Taylor.*

¶55 During the interview, Newhouse asks, "Where are you originally from?" Taylor states "Korea." The outcome of the interview: Taylor was not offered the position from Newhouse / the University.

**08 August 2011**
¶56 Taylor views and prints an electronic summary of Maryland Board of Nursing Web Lookup Licensee Verification. According to Verification, Eugenna Aileen Taylor's CAN 90 Day License Status is expired. Last renewal date lists: " 01/22/2008" with expiration date: "03/22/2008", with qualifying education / training lists: "No Education Information Found". The peculiarity of the aforementioned: 1) Taylor was awarded her Maryland CNA license in March 2008; 2) worked in capacity of a licensed CNA at the Veterans Administration Baltimore Medical Center, an institution that verifies the status of Taylor's Maryland CNA license, 3) the University provided the qualifying education /training necessary for Taylor's license, as transcripts listing relevant coursework was submitted with Maryland Board of Nursing CNA application, and 4) the premature CNA expiration date falsely precludes Taylor from employment opportunities. Put simply, there is a continuing nexus of wrongful conduct amongst the defendants, to place Taylor in restraint. Taylor asserts the aforementioned activities are forms of false imprisonment, as Taylor has been confined to a substantial degree of prolonged and unreasonable restraint – economically and otherwise, and based not only color, national origin, sex, race, but for her decision to engage in protected activities.

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD  20604
Telephone Numbers: 404 542.0113; Fax Number: Taylor does not have a fax number to provide
Email Address: eugennataylor@yahoo.com

**TAYLOR'S ALLEGATIONS STATE A CLAIM UNDER RULE 12(b)(6) & OTHER FRAUDS**
**Preliminary Plead Sufficient to Support & Inference that False Claims Were Submitted**

¶57 In crude catalogs, there are two issues, not necessarily mutually exclusive, at hand: (1) health fraud / representation fraud, and (2) state and federal financial fraud.; both of which have 3 essential elements of this action are namely (1) the University / co-conspirators made statements and took actions to continue receiving money from the governments, (2) statements and /or records the University present were false, and (3) the University / co-conspirators knew it was false.  Moreover, Taylor alleges that the defendants cited in this case were so intimately associated, whether professionally and / or otherwise, that fraudulent schemes were seemingly unnoticeable without vigilant record-keeping / data collection, and so well-orchestrated that without substantial investigation and/or evidence, would escalated confusion and probable doubt of Taylor's claims.

**Health Fraud & Representation Fraud**

¶58 Taylor alleges that Allan, Orlin, Kapustin, Davenport, Lemaire, and Sawyer, licensed nurses and staffed as a University representatives, as well as, Melanie Coffman and Tyree Morrison, and other University leaders in the University School of Nursing (SON), evaluated Taylor for medical issues outside the scope of their professional licensure and / or intended instruction at an institution receiving both state and federal funding.  As such, University representatives not only demonstrated false representation, but fraudulent practices.  More specifically on 23 January 2009 , Allan  states "*After extensive review following consultation with academic leaders in the SON, I have concluded in my best professional and academic judgment that Ms. Eugenna Taylor is not qualified to progress further in the graduate Clinical Nurse Leader (CNL) Program and should be dismissed. "*  On the same day, Orlin further states, "*After extensive review following consultation with academic leaders in the SON, I have concluded in my best professional and academic judgment that Ms. Eugenna Taylor is not qualified to progress further in the graduate Clinical Nurse Leader (CNL) Program and should be dismissed. "*  Taylor alleges that officials were not qualified to assess and / or provide psychological and physical health services and evaluations, thereof.  Put simply, the University routinely rendered care (although sub-standard) that only a competent and qualified provider may to perform with Taylor's consent.  Hence, Taylor applies liabilities in the standard of care received by officials.  Officials performed duties medically and/ or procedurally unreasonable and fraudulent.

¶59 The University's policy states," *At only time during the program, students may be required to be evaluated by University Student and Employee Health for physical or psychological evaluation.  Failure to comply with this policy may result in dismissal from the school.*"  University officials never required that Taylor report to Employee Health for physical and / or psychological evaluation.  Instead, the University took it upon themselves to perform unwarranted psychometric, psychological and physical evaluations on Taylor during requested meetings, and during the time in which Taylor was *conveniently* without student health insurance.

¶60 CareFirst BlueCross BlueShield mails Billing Statement, billing period 02/01/2009) with due date 05/01/09, in the amount of $1976.52 to Eugenna A. Taylor.  The Statement, postmarked April 2009, reads:  "ALTHOUGH YOU RECENTLY LEFT A CAREFIRST BLUECROSS BLUESHIELD GROUP, YOU MAY CONVERT YOUR HEALTH CARE PROTECTION TO AN INDIVIDUAL POLICY.  IMPORTANT:  PAY THIS BILL ONLY IF YOU CHOOSE TO ENROLL.  IF YOU HAVE QUESTIONS, PLEASE CALL 1-800-458-1981.  YOU ARE RECEIVING THIS BILLING STATEMENT IN ORDER TO BRING YOUR ACCOUNT CURRENT.  WHEN WE RECEIVE YOUR PAYMENT, YOUR BILLING CYCLE WILL RESUME ITS NORMAL SCHEDULE. . . . ."

¶61 During an unspecified period, but within fall 2008 semester, the University dropped Taylor's student health insurance.  This type of fraud discouraged Taylor's usage medical access and legitimized unwarranted psychological and medical evaluations that noted Taylor being disabled, unfit, and / or at higher risks for illnesses, particularly illnesses that may be communicably spread (i.e., tuberculosis).  Acting in concert with the interests of the practices of select health insurance companies, the University hoped to deflate and / or maintain insurance premium costs, by promoting health insurance for *worthier* students.  However, and likely more sinister, the University was inclined to use this conveniently eliminate Taylor, per Taylor's discovery of fraudulent practice, including but not limited to pattern of practices of red-lining manipulating student records.  In short, Taylor was primarily dismissed from the University as a result of evaluations that served malicious and covert purposes.  The purpose was to 1) steer Taylor to make fraudulent claims based on disability, as defined by Americans with Disability Act (ADA), 2) assert that grades issued to Taylor reflected her disability, and 3) convey that passed and future employment discrimination claims, based on Civil Rights Act of 1991, can be conceivably and / or situationally manipulated based on Taylor's *disability* status, thereby, further legitimizing continued fraud, and 4) further dismiss other claims made by Taylor.  Put simply, the University 's liabilities per students' claims for disability discrimination, whether real or not, asserts  less  aggregate damages and negative stigma for an institution employing  discriminatory practices based on race, sex, national origin and / or color, and concealed  practices of state and federal financial fraud. The University profited in preserving reputation, and the kick-backs Tyree Morrison and Coffman received were reciprocated in the form of favorable University disposition and actions (i.e., *I'll scratch your back, if you'll scratch mine*).  As such, the University employed evasive schemes predicated on clandestine activities, acts and plans, portrayed as stand-alone acts, but in-fact were mainly concerted efforts to defraud the government and *dismiss* students that vigorously challenge the University's fraudulent pattern of practices and / or report practices to authorities.

**State and Federal Financial Fraud**

¶62 Prior to the Student Aid & Fiscal Responsibility Act signed by President Obama, March 30, 2010, and during the time in which Taylor was a student at the University, the State of Maryland Higher Education Commission ("Commission") administered grant programs by federal state

Eugenna Aileen Taylor
Signature:
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

funds.  Open source information indicates USA Funds and Sallie Mae, served as a guarantor and created a contractual loan programs to students willing to work in Maryland upon graduation, respectively.  "During the fiscal year ending Sept. 0, 2009, USA Funds guaranteed more than $273 million in new education loans to more than 26,000 Maryland borrowers . . . "(www.http://content.usafunds.org/financial_aid/USAFundsDocuments/2009 MDAnnual.pdf).

¶63 Students awarded state loan programs 1) must reimburse the State for all contractual state loans repayments / benefits received, and while the guaranty agency became responsible for default losses.  Thereby, the agency could file a claim with the U.S. Department of Education for reimbursement, and/or receive default aversion fees for assisting students with "managing" incurred federal loans.

¶64 In fall 2008, the defendants engaged in "legally false" certification, whereby falsely certifying compliance to Title 20 § 1091 and Title 20 §§, whereby the University and possibly select individuals representing the Maryland Higher Education Commission were intimately knowledgeable of the critical issues at hand -- fraud.  Taylor presents evident fraud clearly suggesting that University representatives were dissembling and promoted fraud for their own personal gain and University's reputation for producing *worthy* graduates. Factual allegations reflecting fraud, and with respect to Federal Rules and Court Procedures (9) (b)), are stated with particularity. Taylor's allegations of fraud are noted to be above the speculative level.  From in or about 2007 to present, the defendants conspired with each other and with others to devise and participate in a scheme to defraud the government, and students of honest services.

¶65 Taylor received financial aid funding, in the forms of federal loans, state grants / scholarships and private scholarship (i.e., Howard County General Community Hospital) in fall 2007 and spring 2008.  In fall 2008, Taylor's educational funding is provided via state grant / scholarship monies.

**01 May 2008 4:59 PM**
¶ 66 Taylor writes to dsmith@mhec.state.md.us Cc:  eurbansk@mhec.state.md.us:  *"Good morning Ms. Debbie Smith.  Recently I received a letter from the Maryland Higher Education Commission .  This letter indicated I have only accepted the WSSAG Nursing and Senatorial Scholarship for fall 2008 and spring 2009 semesters.  This concerns me, as I have sent you the appropriate documents (i.e. W-2 forms and etc.) via certified mail, as they pertain to my need and acceptance of the Graduate Nurse Faculty Scholarship and Nursing Scholarship/Living Expense Grant awards renew.  When you have an opportunity, please correct and/or update my records.  Thank you, Eugenna Taylor 657 West Lexington Street Apt. G-41 Baltimore, MD  21201."*

**21 October 2008 6:24 AM**
¶67 Taylor writes to James Lyons, Subject: Question / Concerns: Eugenna Taylor – UMD, Baltimore Student.  *"Good morning Dr. James E. Lyons, Sr.  I, Eugenna Taylor, am a graduate nursing student at the University of Maryland, Baltimore, and have been awarded scholarship and grants from the Maryland Higher Education Commission (MHEC).  Per my communication with the MHEC staff, I understand that MHEC submitted an electronic list (roster) of scholarship /grant awardees to the University of Maryland, Baltimore on September 17, 2008; however and to date, the University of Maryland, Baltimore has failed to confirm students / awardees names on this roster.  As a result, students that expect to receive monies, particularly as they relate to living expense grants, are being withheld.  This is of paramount concern for students that await Maryland grants/scholarships to satisfy various financial obligations and/ or necessities for housing. Please indicate or confirm whether there are existing rules / regulations outlining the (maximum) response times for academic institutions to verify the MHEC electronic list of students / awardees.  Thank you, Eugenna Taylor."*

**21 October 2008 5:09 PM**
¶68  Elizabeth Urbanski (eurbansk@mhec.state.md.us) writes to eugennataylor@yahoo.com:  *"Dear Eugenna, I am writing in response to your email to Dr. James E. Lyons, Sr. Secretary of Higher Education, concerning your Graduate Nursing Faculty Scholarship and Living Expense Grant. Dr. Lyons has asked me to respond to you on his behalf.  I have reviewed your file and concur that we have not paid your Living Expense Grant as a result of the fact that we do not yet have the billing roster confirming your enrollment for the fall 2008 semester from the University of Maryland, Baltimore.  The roster was sent to UMB on September 17, 2008, and was due back to our office on Friday, October 17, 2008. Unfortunately, we cannot disburse the grant funds until the school has confirmed your eligibility for the scholarship portion of the program.  I am expecting that UMB will return their roster shortly and at that time we will process the invoice for payment of the grant.  I am going to contact UMB's financial aid office to determine the status of the roster tomorrow morning.  After that time, I will contact you again to let you know the status of your awards.  Sincerely, Elizabeth Urbanski."*

¶69 The University confirmed my eligibility for state financial assistance, despite Kapustin's malicious actions on 11 September 2008.  In consequence to Kapustin's actions, Taylor's student status is less than ½-time / part-time or less than 6 semester credit hours (i.e., 5 credit hours).

¶70 A check (#39558613)  from the State of Maryland – Treasurer's Office is issued to Taylor on or about 08 November 2008, nearly a month prior to the end of fall 2008 semester.  Taylor alleges conspired health care fraud and manipulation of student records (i.e., grades, enrollment, billing / accounts, and / or medical) are reasons  for the deferral.  Namely, Taylor present is presented the following email from Dean Kapustin

Eugenna Aileen Taylor
Signature:
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113;  Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

on 11 September 2008 1:05 PM.  The email is addressed to etayl1009@umaryland.edu, eugennataylor@yahoo.com, reeves@son.umaryland.edu and Cc: Lemaire@son.umaryland.edu, Allan@son.umaryland.edu, irobi001@umaryland.eud, kkauffman@son.umaryland.edu, kbussell@psych.umaryland.edu, and reads: "Ms. Taylor, Please see the document attached regarding class and clinical."  The attached letter from Kapustin states: "Ms. Taylor, LTC Russell, clinical course faculty for Psychiatric Nursing at Shepard Pratt in Ellicott City, MD, reported that you presented for clinical at Sheppard Pratt this morning without fulfilling the mandatory PPD health prerequisite.  Specifically, you did not submit PPD documentation to Student Health and receive clearance from Student Health until late this morning and after you were sent home from Sheppard Pratt.  You have twice missed mandatory orientation for NURS 511 without explanation or excuse.  Under these circumstances, I will not request that Sheppard Pratt assume the burden scheduling and providing you with a third opportunity to attend orientation.  As required for all students completing clinical rotation in our participating facilities, you were expected to have completed PPD requirement before the fall semester began.  You were given numerous warnings and ample time to correct this deficiency. I am immediately withdrawing you from NURS 511 for fall semester.  Provided you remain in good standing and have fulfilled the prerequisites, you may register to take the course next semester.  I have attached a copy of the School policy on Student Health for your reference.  Sincerely, Dr. Jane Kapustin Assistant Dean for Master's Studies.  Cc: Dr. Janet Allan, Dr. Patricia Morton, Dr. Gail Lemaire, Ms. Kristin Bussell."

¶71 Taylor notes that there are notable disconnects.  For one, the University erred in imposing Taylor's withdrawal, without her authorization, from NURS 511.  Second, Taylor's Q-TB results from 09/04/2008 were faxed by Dr. Wen Wu, MD to the University on 09/04/2008 and 09/04/2008, as well as, postal mailed to the University by Taylor.  Third, the University failed to provide a reasoned analysis indicating that prior health policies and standards were deliberately changed, and not just causally ignored.  Fourth, the University lied, as Taylor never "twice missed mandatory orientation for NURS 511."  Last, upon arrival at Sheppard Pratt, Taylor presents proof to Russell that she was medically cleared, but Russell, in fact, requested "additional proof" and instructs Taylor to the University Health Center for additional documentation. that would have not changed the outcome of Taylor's medical clearance and / or determinations regarding her being to be able to participate in clinical.  Moreover, the University failed to take reasonable precautions, as alternative methods and/or less severe actions may have been employed, if necessary.

¶72 The University violated the False Claims Act by steering unworthy students, such as Taylor, toward non-required courses for degree requisites, rather than permitting enrollment in courses necessary for the specific degree sought. and / or requiring  actively enrolled / registered  students , such as those enrolled in Adult Health, to  take a medication  calculation exam; whereby, upon failure of the exam, student may  receive a F grade or voluntarily withdraw from the course  without grade penalty.  Many students chose the later.  As such, false statements and / or grades were made to accelerate payments before otherwise due by fulfilling contractual terms, regardless of students' part-time / full-times statuses, and forcing student to register, attend, and / or remain registered after the drop-add period.  Thereby, should students fail class preconditions (i.e. medication exams), they usually withdraw from the course, and yet the University collects for fee paid (i.e. for Adult Health), either in-part or in-full.

**11 February 2008** at 22:0714-0600 (CST)
¶73 An email from Sandy Klemick, University CNL Student, states, "Eugenna, I got it and thanks.  I will let you know what happens to the tuition when I get a chance to find out. Sandy."

¶74 The University's schemes involve forcing student to prolong studies.  The University coerced and / or steer unworthy students to enroll in courses not required for their degree of study, and imposed conditions likely to result in failure.  Stated simply and as an example, there is no standing written policy indicating that NURS 514 is a required prerequisite for the course.  Furthermore, Taylor asserts that sustained and repeated phrases indicating that Taylor "you (Taylor) aren't worthy," . . . . "there is a worthy enough course for you (Taylor)" echoed by the University, leads Taylor to believe that University's prejudices, not only reflected  sex, race, color and national origin, but her decision to engage in protected activities.  This adversely affected the outcome of Taylor's matriculation at the University and thereafter.

¶75 On 12 August 2008, the University met with Taylor to assess whether the continuation of studies is granted.  The University initially denies the Complainants registration for any classes in fall 2008 and thereafter, rescinds the denial and then defers registration. More specifically, Dean Kapustin and Dr. Kauffman bans the Complainant from registering in fall 2008, per the Complainant's citing the need for an external investigation (i.e., to be conducted by the OCR, U.S. Department of Education).  In short, the Complainant is forced to miss several days of NURS 514 Clinical Simulation Lab, a highly recommended exercise to pass the NURS 514 course, as well as, incur late registration fees.  Per an e-mail correspondence from Conrad Gordon dated 8 July 2008, "The Clinical Simulation Lab will be open for practice during the final two weeks of the summer break (11-22 AUG).  The lab will run Monday-Friday, 0830-1600. . . . .I HIGHLY recommend that you practice all the skill listed in the lab here at school.  TAs will be available to assist."

¶76  Refusal to allow Taylor to register and / or inappropriate remedial action failed to be prompt nor reasonable.  Per the University's continued scheme to block Taylor from registration, either in full- and/or in-part and with delays, resulted in Taylor having not only suffered severe emotional injury, but a violation in her constitutional rights.  In fall 2008, determinations to block and then later allow Taylor's registration resulted in Taylor not only incurring a $100.00 late registration fee, but Persons with authorities cause her to suffer adverse actions

Eugenna Aileen Taylor
Signature:                                    07 Nov. 2011
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

simply because of her race, color, sex, national origin, and her continued practice to engage in protected activities, thereof.  Unconstitutional acts were take pursuant to official policy and /or customs.

¶77 On 26 January 2009, Jeffrey V. Johnson, writes:  *"Your grade was calculated in the following manner:*
> *Paper 1 – 90 x 20%  = 18%*
> *Paper 2 – 90 x 35% = 31.5%*
> *Presentation 90 x 15% = 13.5%*
> *Class Presentation 20 x 15% = 3%*
> *Paper Presentation 70 x 15% = 10.5%*
*Your weighted combined percentage is 76.5% for a C grade.  Jeffrey V. Johnson, Ph.D."*

¶78 Jeffrey Johnson, at minimum, knowingly falsifies Taylor grade for presentation #2. This was not a mistake.  Put simply, Taylor never was given an opportunity to engage in presentation #2.   Taylor was suspended from attending his course, and had missed approximately 4 weeks of class as a result of complaints by Johnson el al.

¶79 In scenarios described above, Taylor asserts that a (1) that the University provided false statements of material fact, (2) the University's knowledge that the statements were false, (3) the University intended that the statements induced Taylor, as well as, the government to act, (4) the government's reliance on statements., and (5) false statements caused unauthorized payments to the University; kindly review supplemental evidence provided.

¶80 It is clear that the University also knowingly submitted false statements, records, and receipts with malice and/or intent to deceive and harm.  Claims, factually false (kindly review the evidence enclosed) were submitted for the purposes of misrepresenting compliance with precondition of payment for government, and in this case, attempting to criminally entrap Taylor while forcing her in a condition of peonage. Demoted, Taylor and other students received compromised educational services and were billed as such.

¶81 The enclosure documents provided with this filing clearly show evidence of false receipt, statements, and records, including but not limited to having Taylor inappropriately secure funding while enrolled less than half time student.  More specifically, on 28 October 2008 and before monies were readily accessible to Taylor, a memorandum composed by Elizabeth Urbanski, of the MHEC, confirms that the both she and the University acknowledged that Taylor was currently enrolled less than half time. Furthermore, the University issues fall 2008 outstanding bills and grades for Taylor, albeit, technically and per her health insurance status, Taylor was never enrolled and / or should have never been allowed to continue fall 2008 studies, based on insurance status.

**Late fall 2008**
¶82 Nicole McDaniel-Smith instructs Taylor to pay on her student loans, as the loans have already accrued.  More specifically, immediately address student loan obligations totaling nearly $1,900.oo per month.

**2 December 2008** 14:39:14-0800 (PST)
¶83 Taylor writes to nmcda001@umaryland.edu, Elizabeth.cavallucci@ed.gov:  *"Ms. Nicole McDaniel-Smith, Please indicate the correct current total charge / balance  for tuition / fees for fall 2008.  Is the balance $6,517.00, as listed on Student Information Management System (SIMS) Registration Fee Assessment (12/02/2008) or $5,498.00, as listed on SIMS Account Summary by Term (12/02/2008)?  Kindly reply via e-mail."*

**3 December 2008**  at 3:19 PM
¶84Leik Hawkin (aidtalk@umaryland.edu) writes, *"Hello Eugenna, This is a question that you need to contact Student Accounts with at 410.706.2930."*

¶85 As early as 2007, the University encouraged University students to utilize University Health for the tuberculin tests.  While University covered tuberculin tests for undergraduate nursing student body, graduate student incurred fees.  In 2007, Taylor was double-billed for her tuberculin test.  In 2008 and according to University records, Taylor was encouraged to receive the tuberculin test at University Health, as the University cited "outbreaks" and an imminent "need."

**15 January 2009 10:47 AM**
*RE:  Academic Jeopardy Subject to Dismissal*
¶86 *"Dear Ms. Taylor: I regret to inform you that following the Fall 2008 semester your cumulative grade point average (GPA) was below the 3.0 minimum GPA required by the Graduate School at the University of Maryland, Baltimore.  Consequently, you are in academic jeopardy effective immediately and subject to possible dismissal from the Graduate School.  If the Office of the Dean of the Graduate School is notified that your Graduate Program supports your continued enrollment, you will be permitted to enroll for the next semester.  In order to retain your*

Eugenna Aileen Taylor
Signature:
Mailing:  PO Box 241 Waldorf, MD  20604          07 Nov. 2011
Telephone Numbers:  404.642.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

status as a matriculating student and to be eligible to enroll for the next semester, you must contact your advisor and request a remedial plan. Specifically, you should:

1.   Contact your advisor (I recommend email) with a copy to Dr. Jane Kapustin within five days of receipt of this notice indicating your interest in continuing enrollment.
2.   If your advisor supports your reinstatement, you and your advisor should develop a remedial plan which includes a timeframe and specific benchmarks for improvement.
3.   Submit the written remedial plan, signed by you and your advisor to Dr. Kapustin.
4.   If Dr. Kapustin supports your continued enrollment and remediation plan, she will forward the plan and approval to the Office of the Dean of the Graduate School, 5th Floor Administration Building, no later than the first day of the next term classes.

If you wish to enroll next semester, you must meet the deadlines in this letter; failure to do so could result in your dismissal from the Graduate School.  If you have any questions you should contact Dr. Kapustin or you may contact me.  A hardcopy version of this notice is also being sent via postal mail.  Sincerely, Keith T. Brooks, Assistant Dean University of Maryland, Baltimore Graduate School 620 W. Lexington St., 5th Floor Baltimore, MD  21201 410-706-7131  410-706-3473 (fax)  410-706-7714 (TDD)"

¶87 On 22 January 2008, the first official day of spring 2009 semester, Kapustin and Lemaire attempts to coerces Taylor to sign a remedial plan. In furtherance of their plan, Kapustin and Lemaire refuses to present the remedial plan to Taylor prior to 22 January 2009, despite Taylor's repeated request for her review.  During the meeting with Kapustin and Lemaire on 22 January 2009, Taylor  refuses to sign any document alleging that grades received spring / fall 2008 were true and reflective of her academic performance and/or mental / behavioral state.  Shortly, thereafter, Dean Allan opines that Taylor should be dismissed from the University.

**09 February 2009**

¶88 "Dear Student, Your account is PAST DUE!  Please find attached a statement representing monies owed to the University of Maryland, Baltimore.  Kindly remit payment or call this office as soon as possible to discuss this account before the due date on the bill.  Failure to communicate with this office and resolve this outstanding oblicate by March 9, 2009 may result in your account being deemed delinquent. Delinquent accounts are forwarded to the State of Maryland Central Collections Unit and are subjected to a 17% collection fee.  Please be advised that CCU reports delinquent accounts to the major Credit Reporting Bureaus, and you may be subjected to interception of your State Income Tax refund to satisfy this debt.  If you have any questions, please feel free to call me at 410-706-1336.  Thank you.  Sincerely, Nicole L. Frazier."

**EMPHASIS ON SELECT**
**FACTS - PRETEXTS & CONTINUING NEXUS OF WRONGFUL CONDUCT**

¶89 The University claims that Taylor's behavior and academic performance was wanting.  Nonetheless, Taylor disputes the validity of the criticism.  The question is not whether Taylor honestly believed the reason was inaccurate or unfair, although she claims statements were plainly inaccurate and con-fabricated, but whether the University believed the reasons they offered to explain the continued retaliation and suspension and later dismissal were based on facts.  The immediate interest, in question, leans toward malicious intent.  The critical issue regarding the matters is as follows:  the University proffered reasons and / or actions were pretextual.  Essentially, reasons and / or actions were based on lies and attempted to conceal schemes and / or legitimate a continuing nexus of wrongful conduct.

¶90 The University "on going reliance on false testimonies," without due process communication constituted a "continuing violation of Title VII, Title IX, and constitutional discrimination.  In from spring 2008 to 2009, select students and University representatives lied about Taylor's behavior and performance in attempts to attack Taylor's worthiness to continue at the University, per her claims and discovery of fraud.  In furtherance of the University's scheme, the University knowingly accepts ill reports of Taylor's performance and behavior without allowing Taylor to participate in the University's internal judicial process. The University failed to follow-through and / or equitably enforces adequate and transparent judicial processes.  The University failed to offer alternative legal mechanisms for alternative dispute resolution.   For months, Taylor, took refuge in a hotel, while she waited for the University to allow her to participated in the judicial processes.

¶91 Taylor asserts that claims that the University made several statements, written and verbal, in connection with her dismissal that were malicious, reckless less and untrue.  Per patterns of practice, the University enforced upon so-called protection of "privileges" for purposes of engaging in deleterious acts against Taylor, while selectively releasing communications and / or engaging in acts from which they could assert favorable outcomes.  Albeit, the University knowingly disclosed information regarding Taylor to third persons, thereby, rendering such communications without privilege. The University monopolized Taylor resources with intent to subject her to a form of peonage, as well as, professional, financial, and personal ruin.

**20 November 2008**

¶92 "I have received your email dated November 19, 2008 and accept it as your appeal of my decision to temporarily suspend your appeal of my decision to temporarily suspend you from attendance in Dr. Johnson's NURS 679 class, pending the outcome of Judicial Board proceedings into a complaint regarding your alleged unprofessional conduct in class, including abusive language and disruptive behavior.  The complaints persuade

Eugenna Aileen Taylor
Signature:                                                         07 Nov, 2011
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

*me that immediate temporary action is necessary to prevent further disruption of the class. Your statement that 'the allegations in the letter are unfounded' leads me to believe you do not agree that your behavior is disruptive and that you do not plan to change your behavior. For these reasons, I am upholding your temporary suspension from attendance in Dr. Johnson's NURS 679 class, pending the outcome of Judicial Board proceedings into the complaint submitted by Dr. Kapustin. You will have a full opportunity to be heard during the Judicial Board process. You permitted to enter the School building to attend other classes and for other legitimate School activities. If you do not comply with the temporary suspension from attendance in NURS 679 class, I will request that the President ban you from campus."*

**HARASSMENT**

¶93 University officials requests for weekly meetings, often times causing Taylor to miss in-classroom studies with other students. Taylor found the University's conduct to be abusive, offensive, hostile and unwarranted. Sexual harassment was so severe, pervasive and offensive, that Taylor was being barred from educational benefits and access to full education benefits, thereof.

**25 September 2007** at 8:07 PM

¶94 *"Dr. Davenport: I will meet with you approximately 11:15PM, tomorrow; however, I may arrive @ 11:30PM, as I am scheduled to attend Health Assessment Lab. Yes, I signed-up last Wednesday; this indicates my level of enthusiasm-oriented x4. 'Reason & judgement are the true qualities of a leader.' – TACTIUS  Eugenna Taylor."*

**14 November 2007** 8:34AM:  Complainant writes to Major Beth Pettit-Willis

¶95 *"Kindly address this hypothetical question/situation when you have an opportunity:  a novice rn is providing a complete health assessment on Mr. Jeopardy, a new patient . . . Thank you, Eugenna Taylor CNL Student in Health Assessment."*

¶96 The Complainant did not address the 14 November 2007question/document to Dr. Davenport. Nonetheless, the Complainant is beckoned to meet with Dr. Davenport. The meeting did not address and resolve the question/situation that was originally presented to Major Beth Pettit-Willis. During meetings with Dr. Davenport, the Complainant experienced harassment.

**23 January 2008**, Adult Health Competencies

¶97 Complainant complete Adult Health Competencies with the exception of Narrative System Documentation. Davenport instructed Complainant to not to be concern with Narrative System Documentation as I will be assigned to appropriate clinical instructor. Note:  During meetings in Davenport's office, Davenport indicated that "*you people don't read*." Davenport threatens the Complainant stating "You don't live like a graduate student; you are unfit to be a nurse." Davenport also made reference to:  If you won't meet with me I can make you extend your Program here . . . you'll be lucky to graduate from this Program; I know your background.

**23 January 2008**

¶98 On the same day, Davenport states, Adult Health Competencies, Taylor received an email from Nichole Widerson, University Assistant Director, Auxiliary Services. Wilderson writes: "Hello Eugenna, As I walked past the Pascault Row apartments this morning, I noticed that you had left one of the windows of your apartment wide open. I called our maintenance chief (and asked him to go to your apartment and close the window."

**Early spring 2008**

¶99 The Complainant was enrolled in NURS 514 course. Per the requirements of the NURS 514 course, both clinical simulation and medication calculation exams must be passed, with the later passed at 100 percent. Mr. Gordon cited the Complainant did not pass medication calculation exam #1 due to citing 0.5 of pill rather than indicating ½ of pill, and "needed to be humble." In response, the Complainant reports to the University regarding Mr. Gordon's failure to acknowledge that 0.5 and ½ are equivalents, the instructor's inappropriate questions, as students were not instructed either verbal and/or written that responses in decimals were unacceptable, and comments (i.e., harassment). This harassment includes, but is not limited to, Mr. Gordon forcing the Complainant meet with him in hostile environment, less than two meters away from the office of Dr. Davenport, the Co-Director of the CNL Program. Note: Complainant complained about Dr. Davenport request for weekly meetings during in fall 2007 to Dean Morton and CNL Co-Director, Gail Lemaire). Mirroring fall 2007 the Complainant's grievances against Dr. Davenport, complaints regarding Mr. Gordon were also dismissed. The Complainant was advised to withdraw from the course in spring 2008. The Complainant withdrew from NURS 514 per the authorization of Dean Kapustin and Co-Director of the CNL Program, Dr. Gail Lemaire.

**3 February 2008**

¶100 "Eugenna: *I'm a bit confused. Do you want to make an appointment or not? I'm also a bit unclear on your answers to my questions. Here are those questions and my interpretation of your responses. Please clarify. What is your primary language?  You say Korean, but you don't write or read it. Total immersion Arabic; this implies either living in Egypt or being trained at a language school (such as the Defense Language Institute). I have assumed that English IS your primary language, but you are more comfortable with conversational Korean. Where are you from? I get the impression you have moved a great deal. Let me ask this:  Where were you born? Where do you consider home? Where did you*

Eugenna Aileen Taylor
Signature:
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

*get your previous degree? You really didn't answer this. Let's try this. You are a CNL student, and therefore by definition have a prior bachelor's degree as a minimum. What college or university granted you that degree? What is that degree in? What was your major? What does it say on the diploma? I am trying to help you. Please use the "Reply" button when you respond. Conrad"*

¶101 Taylor was intimidated and harassed.   Thereby, assaults involving threats of force and insulting remarks were exercised to cause Taylor severe emotional and / or physical distress.  In retrospect, Taylor has notified University officials that she was psychically an emotional sensitive to derogatory comments, questions, humiliation, intimidation and discriminatory practices.  Moreover, Taylor perceived that Gordon's personal questions were an invasion of her privacy, harassing and nature, and forays to further inappropriate sexual and race / color / national origin discussions.

**6 February 2008** 11:57 AM:  Email from Conrad Gordon indicates:

¶102*"I am assuming that you are requesting an appointment for 1640 today.  I do not know how long my meeting will last.  I can not leave it to meet you, but I will keep an eye on the time and hopefully make it by the time you indicated.  Please wait for me if you can.  We can meet in Suite 355, which is opposite my office."* Suite 355 is opposite to Conrad's office, but is located down a long corridor.  Suite 355 is Davenport's domain.  Repeated interactions that were within close proximity to Davenport were unwelcome, and caused severe distress.

**20 April 2008**, 11:54 AM

¶103 Major Thomas Sawyer NURS 511 clinical instructor writes:*"As long as you continue to interact appropriately with patients and staff and work on completing your pap! er, you will have achieve the two goals I set for you. . . "*

¶104 Evidence shows discriminatory attacks and/or harassment. Quid pro quo (i.e., listing  pap  <smear>  as  part of  Taylor's achievement / goals / requirement was shocking and humiliating for Taylor).  At times, Sawyer's attacks were coupled with inappropriate sexual gestures and/or indications. Taylor believes that if she were a male, she would not have been treated in the same manner.
 Taylor was utterly humiliated and failed to benefit from a harassment- and intimidation-free educational environment.  The University violated Title IX and the Equal Protection Clause of the Fourteenth.

¶105 Refusing to agree with Sawyer's sexual solicitation requirements and demands for sexual compliance, Sawyer claims Taylor failed the course mid-way spring semester 2008.

¶106  Per Title VII Section 219 (2) (d), the University and/or affiliates are vicariously liable for harassment and knowingly engaged in unreasonable deferrals, and fraudulent misrepresentation and / or concealment of facts to deny Taylor's claims.  The University should have known and / or reasonably knew the facts, that they were vicariously liable for Tom Sawyer's sexual harassment and Mech's failure to disclose her association and/ or concurrent position at Howard County Community General Hospital presents liabilities.  This "accepted practice" is to the contrary of University counsels' "legal duty."  Put simply, Taylor later discovers that Ann Mech, is also a board member at Howard County Community General Hospital, the facility that also awarded Taylor a nursing scholarship.  Concealment of conflicting interests and/ or activities fails to reflect degrees of reasonable care, skill and / or ethics expected of members of the legal profession.  Put simply, it is a reasonable expectation for counsel to tell Taylor that s/he has personal interests, membership, and / or activities that may affect his professional judgment.  Thereby, Mech may liable for legal malpractice.  Essentially, the University failed to take effective measures to remedy the harassment, keep it from reoccurring and disclose important information in pursuit of  an impartial investigation and need for transparency.

**September to November 2008**

¶107 Taylor felt uncomfortable with Jeffrey Johnson eyeing her breast.  As such, she frequently shielded her breast with her laptop computer.  In response, Johnson announces that laptops cannot be used in the classroom for note-taking.  Taylor complied with Johnson's announcement.  Johnson and students, Coffman and Morrison, falsely accuses Taylor of Taylor using her computer after the announcement was made.  Taylor disputes the accusations.  While Taylor admits occasionally used her laptop to capture classroom discussions prior to the announcement, Taylor ceased typing notes on her computer after the announcement.  Put simply, Taylor continued to take notes in hand penmanship, but kept her laptop and /or books in up-right position to shield Johnson's view of her breast.

**12 November 2008**

¶ 108 Tyre Morrison writes (TyreeMorrison@comcast.net) To:  Joan Davenport Cc:  Jeffrey V. Johnson  Subject:  CNL student in NU 769
*"Dr. Davenport:  I am not sure whom to write about this concern but I thought I would start with you.  There is a CNL student, Eugenia, who is a graduate nursing class NU 769 taught by Dr. Jeff Johnson.  I am an NP student in the class also.  This is the second class I have taken from Dr. Johnson and I also work with him in the student group Nurses for Global Health.  I was one of the students who worked all summer on research for the new Certificate in Global Health.  I need to discuss with someone the disruptive influence this student has been in our class.  After weeks of 'taking' her attitude and disrespectful behavior, I finally said something to her during class last week when she was belligerantly interrupting Dr. Johnson during a discussion.  After class, many students came up to me and thanked me for finally saying something to this student.  I thought I was the only one bothered by her attitude but apparently not.  From the first day, she acted out.  Dr. Johnson always like to take pictures of us to hand out so that we can call each other by name.  This is a seminar class, we sit in a circle and interact, discussing issues of health and social*

Eugenna Aileen Taylor
Signature: ~~~~~~~~~~~~~        07 Nov. 2011
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

*justice. She refused to have her picture taken. That is her right. Then in several early classes she pulled out her computer and googled the whole class. Dr. Johnson asked the class not to use the computers because it is disrespectful to the student presentations, so she stopped computer use but instead sat in the corner and read a novel during subsequent classes. She does not interact with the class members but does try to provoke and challenge Dr. Johnson. Her comments are out of context and said with aggression and belligerence. She is trying to start a fight. She does not do this with other students. She does come out with inappropriate remarks which makes me wonder if she is just trying to get attention or make us all mad. One instance, I was discussing an aspect of the World Bank and she said his remarks were similar to the reports of the Tuskeegee Syphillis Study. Totally out of context. In conclusion, I don't know what to do or if I should do anything but her aggressive disrespectful conduct with Dr. Johnson should not be allowed in the SON. Dr. Johnson is the ultimate professional and has NEVER taken the bait. For myself, I did lose it last week with her constant criticism and defensiveness. She told us she is not interested in being in the class, was forced to take the class by her advisor, and is only interested in getting her nursing license. I would never want to wake up in a hospital bed with her as my nurse. Respectfully, Ms. Tyree Morrison, BSN, RN"*

**17 November 2008**

*¶109 "Dear Dr. Kapustin, I am writing this letter to bring to your attention the increasingly rude and disruptive behavior of Eugenna Taylor, a student in my class – Nurs 769 Society, Health and Social Justice. This class is organized as a seminar and involves a great deal of student involvement and participation. Discussions focus on sensitive and often controversial topics such as racism and gender discrimination. For many of the students taking the class is the first time they have been asked to think deeply about the root causes of ra ce, class and gender inequalities and health disparities and their relationship to health. Because of the sensitivity of some of these topics I consciously try to create a safe and supportive learning environment. In the beginning of the class I take each student's picture with a digital camera and then distribute a roster with names and photographs to encourage students to learn and use each other's name. I have used this technique successfully with hundreds of students. Ms. Taylor is the first student I have ever had that refused to participate in this and insisted that her picture not be taken. Thise as certainly her right which I respected yet was the first example of her setting herself apart from others. I also distribute a short informational card asking for some basic occupational and educational background for each student and Ms. Taylor declined to answer most of the questions that I asked students to address indicating that they were not applicable to her. On the second day of class I witnessed the first example of what was to be a consistent pattern of behavior. Mr. Belay Mengistu was making a presentation and Ms. Taylor interrupted him and began speaking over him. The content of her remarks was inappropriate in that it did not relate to what he had been saying. By her facial expressions and tone of voice, Ms. Taylor was also communicating that she believed that she had more knowledge and understood this topic better than did Mr. Mengistu. The second time she did this Mr. Mengistu, who was clearly surprised to be interrupted again, told her with some exasperation to stop interrupting and to let him finish. At the beginning of the next class I reminded alll of the students of the ground rules of our seminar discussions: Do not interrupt, raise your hand when you want to speak, respect and support each other by listening carefully to what each student has to share. Ms. Taylor has consistently violated those guidelines throughout the semester. She has frequently interrupted me when I speak with questions or statements that accusatory. For example she has labeled some of my statements in class as being racist, and has recently accused me questioning President-elect Obama's integrity. Ms. Taylor is clearly an intelligent student who is well versed in certain areas that we touch on in class such as globalization and economics. When she has shared some of her thoughts and ideas she sometimes prefaces her remarks by saying something to the effect that "Of course, you (meaning myself and the class as a whole) don't have the background to really understand this in the way that I do because I am in contact with many senior policy makers in the Government.' I have seen by the expression on class members faces that they react first with surprise and then increasing distress and irritation by the way she postures towards others and her practice of one-ups –man-ship, that is so foreign to the learning environment that is generally present in this class. Mid way through the semester, Ms. Taylor appeared to withdraw from participating in the class. She would sit in a far corner, outside of my line of sight, and focus her attention on her laptop. When I was informed by a class member that she was web surfing and not taking notes and that this was very disruptive to that student, I asked Ms. Taylor and the class as a whole to stop using computers in class. I emphasized that this was a seminar discussion. Ms. Taylor was visibly upset by this but did not comply. Following this I was told by class member that she was now apparently reading a boook that was not related to the class during the seminar. Ms. Taylor also appeared increasingly exasperatd by having to be in class. I could see her roll her eyes and make exasperation that suggested her irritation with my remarks or those of other students. She seemed to be communicating to all of us that the class was a waste of time and beneath her. When she did speak it was often to interrupt myself and other students, and to express an opinion that often undercut the validity of what the speaker was saying, while prefacing this with the statement 'I'm not saying this, but I have heard it said by others that . . ." She was one of the last students to volunteer to undertake a class presentation of one of the readings. At the break , she was seated and she called me over to her, and asked me to tell her what to present. I responded by saying: 'i know you are interested in globalization. Why don't you present on one of those articles." She said: 'No, I don't want to do anything on that.' I suggested she take a look at one of the articles that dealt with the social justice aspect of trade policy and its impact on health. She responded saying something to the effect that 'she was in wrong class then.' She responded with some emotion that she had been force to take this class and that she didn't have anything to say about it. Several students overheard this exchange. The following session, when she did make her presentation, was another example of her rude an disruptive behavior toward her classmate and myself. Another student, Mr. David Maina, was presenting the first paper in a series on globalization and health. This is difficult and complex material and he was making an effort to express what he had read and having some difficulty doing so. She interrupted him and took over his presentation, suggesting that they combine their presentations, and began to speak – essentially silencing him and precluding him from giving his presentation. Her statements, gestures, asides to other class members, and interjections were most pronounced that day and bordered on the explicitly insulting. She implied that I was not running the class correctly, that I didn't know what I was talking about, and that I didn't*

Eugenna Aileen Taylor
Signature:
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

*encourage debate or differing opinion in the class.  She mentioned that at  Harvard and Yale and other top schools students were expected to challenge their professors and implied that this was certainly not the case here.  She attacked me on minor issues having to do with the role of the WTO in health organization and when I refused to enter into an argument with her and tried to steer the class back to the main points she once again implied that I was less knowledgeable than she.  I could see the class reacting more and more to her behavior, and while I tried to steer things in a positive direction it became more difficult.  In my view she was aggressively trying to question and subvert my authority as the teacher while elevating herself above myself and her classmates.  The reaction of the class was visible to me in the expressions on people's faces. At one point one of the class members, Ms. Tyree Morrison, interrupted Ms. Taylor and asked her to be silent while I explained my position.  Ms. Taylor is clearly an intelligent student, yet she has not used her background and knowledge to make a contribution as I had hoped.  She has consistently been rude and disruptive to me and her fellow students.  She has also expressed through her verbal and non-verbal comments to myself and others that she feels that the experience of being in the class is a waste of time and in some sense 'beneath her.'  Her behavior has diminished the experience of the class for other students according to statements that members of the class have made to me.  Her disruptive behavior has increased over the last several weeks and I am concerned that it may intensify in the future.  For this reason I think it would be best if she be withdrawn from the class at this time. Sincerely, Jeffrey V. Johnson , Ph.D. Professor and Director PAHO / WHO Collaborating Center."*

**17 November 2008** at 1:56 PM

¶110 From TyreeMorrison@comcast.net To:  Jane F. Kapustin Cc:  Jeffrey V. Johnson Subject: NU 769 Student.  *"I am supplementing the document that I sent to you and Dr. Davenport last week with the following.  Our class on November 11, 2008 was disrupted by the student Eugenia who made no effort to stop her burping and yawning during student presentations.  At one point during the class discussion, Eugenia commented that students at Harvard, Princeton and other Ivy League schools are encouraged to challenge their professors and correct him/her if they are wrong.  She asked the class members how they could sit and listen to a professor who does not know anything about the topics he is discussing.  All he wants to do, she continued, is have the students do the work for him, instead of teaching the class.  She rudely began to yawn and sign LOUDLY each time Dr. Johnson would make a comment in class.  Eugenia makes no effort to hide her displeasure with the class.  She tries to refute many of the comments Dr. Johnson makes, especially related to economic issues, but is unable to document her sources.  She has "friends who have important jobs in D.C." is what she tells the class.  These friends know the inside forces which caused the problems.  Implicit in her loud, abrasive comments is that Dr. Johnson does not know anything about this subject.  Regardless of what Eugenia has to say, her words are bathed in an angry vicious, aggressive framework that belies any point she might have to make.  It is as if she is trying to make us all mad which is not the point of a seminar class on social justice.  We are there to debate issues of inequality, racial and gender bias, social problems which keep poor people stuck.  For those class members who are intimidated about speaking in class, the thought of her shrill laugh and inappropriate comments make them think twice before speaking.  I have noticed a difference a caution in Dr. Johnson which is understandable given how she directly attacks him.  It reminds me of raising teenagers.  Doesn't matter what a parent says, often a teenager will have a quicker counter response.  In our class, regardless of what Dr. Johnson says, Eugenia is there to intimidate him in any way she can.  Not a way to have a positive class experience.  I would like to take this class again without her as a class member.  I think the experience would be richer if everyone was free to speak his/her mind in an environment of thoughtful expression which is the hallmark of Dr. Johnson's teach style.  Tyree Morrison, BSN,RN."*

**19 November 2008**

¶111 Melanie Bazensky Coffman , RN writes :  *"Dear Dr. Kapustin , The SON has always been to me a place of respect and professionalism with an inviting atmosphere and a favorable learning environment.  This semester I am taking the 769seminar "Society, Heath, and Social Justice" lead by Dr. Johnson.  Although I have many positive things to say about this class, I feel the need to address one hinderance this class has, and that would be student named Eugenia Taylor.  This is a seminar style class and we get graded for participation points.  We sit in a circle and discuss the required reading.  Each week a few students lead the discussion on certain topics.  We are encouraged to share our thoughts on these topics. Nursing students are expected to conduct themselves in a professional manner, and as a graduate nursing student the behavioral expectations are even greater.  This is why I find the actions of Eugenia to be a poor example of how nursing students behave.  Here are some examples.  **She displays anti-social behavior** – sits in corners, attempts to place her seat outside of the circle.  Hides behind her laptop and notebook.  Writing / typing while people are talking.  **Inappropriate communication** – interrupts people when they are speaking.  Uses an aggressive and condescending tone when speaking.  **Disrespectful to Dr. Johnson** – As mentioned above, this is a seminar class and it is meant for discussions.  There is no need to take notes because we are suppose to be listening to each other and giving eachother our undivided attention.  Before our 3rd class started Dr.Johnson quietly/politely asked Eugenia to put away her laptop so she can participate in our discussions.  She replied aggressively "I AM TAKING NOTES!" . Dr. Johnson explained we are graded more on the discussion.  Eugenia replied 'Other people are using their laptops'.  (However, I did not notice other students using their laptops when class started).  Eugenia constantly interrupts Dr. Johnson to try to correct him.  She does this in a very aggressive and condescending tone.  This makes me feel very uncomfortable because it seems as though she wants to pick a fight with Dr. Johnson.  **Unprofessional behavior:**  yawns and burps loudly while Dr. Johnson and students are presenting.  Laughs while people are presenting.  Example: Last week (11/12/08) while a student was presenting, I noticed she was speaking very fast and turning red.  After the break I told her she did a great job.  She replied "I was really nervous, every time I looked over at Eugenia she was laughing at me.  I just wanted to get through the presentation" . (11/12/08) In order to address this situation, I decided to speak to Eugenia about my opinion of her behavior.  After class was finished, I saw her walking in the hallway towards the elevator.  I called out "Hey Eugenia" . She replied something like "What is it now, why is everyone getting on me" . I stated "I have to say that although I agree with some of the things you say in class. . . It's just that you sometimes use an aggressive and condescending ton" .  She responds "Well that's just who I am*

Eugenna Aileen Taylor
Signature: _____  07 Nov , 2011
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

*and I am not going to change for anybody (pause). Maybe it's just my culture". To which I replied "No, I think it is you" , and she said something like "really, you do?" . I just walked away (I noticed a classmate, Leia Osborne was walking behind me). Although this is my favorite class I have taken at the SON, I wish Dr. Johnson and other students did not have to be exposed to such a display of respect. She is a poor representation of the SON as she completely disregards the schools professional code of conduct. I will contact you about any update information regarding this situation If you would like to contact me my email address is mbaze001@umaryland.eud. My cell # is 443-904-6742. Thank you for your time and consideration in this matter. Sincerely, Maelanie Bazensky Coffman, RN."*

¶112 Taylor asserts that she was forced to enroll in Dr. Johnson's class, a course not required for CNL degree requirements. University officials decision to have me enroll in Johnson's course was premeditated, as early as fall 2007. Per excerpts, below:"

> **30 August 2007 at 12:12:44**
> ¶113 *"Eugenna – I understand Dr. Wozenski has talked to you about the documentation needed for an exemption? She Can recommend the exemption for you once she see the course(s) you have had at the graduate level that mirror N622."* Ann Mech, JD, RN. Coordinator, Legal Affairs

**22 November2008**
¶114 Taylor infers, based on continuing situational and contextual harassment, that "b" usage intentionally denoted "black." Dean Allan writes, *"The e-mail of 11/21/08 sent at 11.37 am is the only correspondence other than re-sending the letter that you received by e-mail on 11/20/08 2.15 pm I corrected the spelling of your b name. The rest of the letter remained the same. Janet Allan."*

**CAUSAL LINKS WITH STATED PROXIMITY (TIME and / or DATES)**

¶115 Issues presented are confounded with triable issue of facts. More specifically, the University participated in scheme to improperly enforce the use of Taylor's time and facilities while defrauding the U.S. Government. On occasions, Taylor engaged in conversations with faculty and more specifically, with Dr. Michael in January regarding disparate treatment with regards to instruction, feedback, and issuance of grades. Put simply, the University focused on exploring and / or constructing false cultural, racial, psychological motif, specific to Taylor, determines the merits of legitimizing Taylor's treatment and academic performance. Repeatedly, offensive and non-academic comments and directives were presented to Taylor.

**09 January 2008**
¶116 *"Dr. Michael, I read your posting to students regarding the "assignment crunch." I am neutral regarding the deadlines, as the "crunch" was anticipated for this truncated winter semester. However, my concerns regarding the course are the following: Although most students do participate in the BlackBoard Discussions, we may be uncertain as to progression, in terms of grading for this section. At times, I do not receive any feedback. Moreover, in one situation, I only received the comment, "Hawaii sounds wonderful!!!!" I would like to know how to, if necessary, improve my performance in Discussion postings, rather than continue with the status quo, as thus far, I've received a poor score* for my resource paper. It is my goal to learn as much as possible from this course, and improve my understanding as to what may be expected for a grade of an "A." Eugenna Taylor.* This communication was followed by an in-person meeting with Dr. Michael. Dr. Michael's met with Taylor and cited that *"you are an average student"* . . . *"you must learn to accept that."*

**29 April 2008**
¶117 Allan, Robins, Mech, Eddy, Orlin, Morton  and other University representatives are liable per (1) their personal involvement in the constitutional deprivation and / or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Moreover, the University's police states, "The Associate Dean for Academic Affairs will make the ultimate decision regarding the student's continuation in the clinical area of any conditions placed on continuation. Excerpts from a letter by Meryl L.K. Eddy, University Counsel states: *Dear Mr. Rhodes:  This letter is to confirm the details of our telephone conversation last evening.  The investigation contact information set forth in Ms. Robins' April 22 letter to be modified as we learned that Major Sawyer is not an employee of the University. Consequently, Ms. Taylor's sexual harassment complaint is being sent to Ms. Tricia O'Neill, UMB Office of Academic* Affairs and to Assistant Professor Ann Mech, UMB School of Nursing who will jointly conduct the University's investigation. . . . .Sincerely, Meryl L.K. Edddy University Counsel Cc:  Karen Kaufman, Irma Robins, Tricia O'Neill, Ann Mech.*

¶118 The above letter, reflecting course NURS 511) is later followed by the University's enforcement to dismiss Taylor for the University, which was procedurally and substantially unreasonable.  In short, on 19 November 2008, Complainant was dismissed from course NURS 769 Societal Justice. The University cites Taylor's speech bordered on explicitly insulting, yet in light of a non-public forum, Taylor expressed herself in speech and view-points that were reasonable, neutral, and without sexual and/or racial overtones.  The consequence of the University's actions results in Taylor being   forced to miss 4 weeks of class and preferential mistreatment in the issuance of grades for course NURS 769. Dr. Johnson, instructor for NURS 769 falsified Taylor's grade.

Eugenna Aileen Taylor
Signature: _____   07 Nov, 2011
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

¶119 There are distinct parallels, and yet, schisms per course NURS 511 and NURS 769 activities. A few key parallels are as follows:  In both NURS 511 and NURS 769, the University prevented the Complainant from completing the last few weeks of the remaining semester.  The Complainant is vocal regarding adverse and inappropriate actions regarding course instructors' behaviors, grade assignments and/or the University's decision to withhold the determination of grades.  The University claims the Complainant engaged inappropriate presentation, and/or behavior that borders the peripheries thereof, without sufficient cause to remove the Complainant from integrated learning environments free from harassment in courses NURS 511 & NURS 769.  The University issued inappropriate remedial- and /or race-conscious-measures to justify acts.

¶120  Conversely, there are predetermined, deliberate, and impacting schisms in the issuance of grades for NURS 511 and NURS 769.  For one, the Complainant missed 4 weeks of NURS 769 during the later part of fall 2008. Rather than assign a grade of "D," as in the case with NURS 511 course grade, the University intentionally circumvents a noticeable pattern of unethical practices by issuing the Complainant a grade of "C." Per review of accompanied attachments, the Complainant's calculated grade for NURS 511 reflects a calculated "C" grade; yet, this grade is remarkable below average grades received by her peers and a "D" grade remains on Complainant's transcript.

¶121 Notwithstanding the previous indications, the Complainant's NURS 511 paper and presentation was graded by a non-clinical instructor, Dr. Mary Haack, and without peer evaluation and influence of grades, as with other CNL 511 students.  Concomitant to the irregularities, Dr. Haack's "invite" to grade the paper and presentation was unbeknownst to the Complainant.  Dr. Haack joined the presentation group at the time the Complainant was scheduled to present; Dr. Haack is removed from the engagement immediately after the Complainant completed her presentation.

¶122 Dr. Haack manipulates records by citing remarks on the Psychiatric Mental Health Nursing, NURS 511 Clinical Presentation Evaluation, indicating the Complainant may have and/or otherwise included/precluded "sexual abuse. ..paper . . .prostitution. . .presentation?"  The Complainant paper, a detailed account of the paper, does not indicate and/or reflect issues of prostitution and etc. Per Dr. Haack's peculiar comments and grades, the Complainant attempts speak with Dr. Haack regarding grades and nebulous remarks, Dr. Haack is conveniently unavailable and the Complainant is redirected.

¶123 The University indicated that it was unnecessary for the Complainant to take the final exam and complete the remaining NURS 511 clinical rotations, as the Complainant supposedly failed NURS 511; yet, the Complainant was issued a final grade of D for course NURS 511 in July 2008, pending the outcome of the University internal investigation regarding complaints against Major Sawyer.  Prior to July 2008, the University issued the Complainant a NM (No Mark) for NURS 511 and attempted to coerce the Complainant to refute the course grades through use of the University Capricious Grading Policy, which in fact was inapplicable to a litany of intentional retaliatory acts, and had marginal impact, if any, on the surrounding and/or direct matters of concern.  Stated simply, the Complainant grades were assigned deliberately and were in retaliation to Complainant's grievances.

**29 April 2008**
¶ 124 Letter from University of Maryland, Baltimore, dated 29 April 2008; from Meryl L.K. Eddy, University Counsel
 *"Dear Mr. Rhodes:  this is to confirm the details of our telephone conversation last evening.  The investigation contact information set forth in Ms. Robins' April 22 letter had to be modified as we learned that Major Sawyer is not an employee of the University.  Consequently, Ms. Taylor's sexual harassment complaint is being sent to Ms. Tricia O'Neill, Senior Advisor, UMB Office of Academic Affairs and to Assistant Professor Ann Mech, UMB School of Nursing who will jointly conduct the University's investigation.  Ms. O'Neill and Assistant Professor Mech will contact Ms. Taylor in order to investigate her allegations.  As part of their investigation, they will interview the accused, witnesses, and Ms. Taylor.  After a thorough investigation, they will be in touch with Ms. Taylor again.  A report with recommendations will be provided to the Dean of the School of Nursing.  As Ms. Robins mentioned to you last week, the University takes allegations of sexual harassment very seriously.  As we discussed, Dr. Kauffman is the Chair of the Department of Family and Community Health and the person with whom Ms. Taylor should be communicating.  It is my understanding that Ms. Taylor has still not arranged to meet with Dr. Kauffman despite her repeated requests that she do so.  The e-mail contacts that Ms. Taylor has made with Dr. Kauffman are short and confusing, emphasizing the need for the Chair to meet personally with the student to make the final alternative arrangements for this clinical course.  Via e-mail, Ms. Taylor has rejected many of Dr. Kauffman's suggestions and seems to not understand course requirements that need to be satisfied completely within an ever-shortening time frame in order to keep Ms. Taylor on a satisfactory academic track at the School . . "*

**12 August 2008**
¶125 *"Dr.  Kapustin and Kauffman, As a result of our meeting today, you did not allow me to register for fall 2008 classes per my having cited a request for an external investigation with the Office of Civil Rights.  Today you've presented the attached document dated 18 April 2008.  This was the first time I've viewed and/or have known about the document and its false contents.  I have cc:  the letter to other Administrators with hopes of continuing my studies in fall 2008.  Eugenna Taylor."*

Eugenna Aileen Taylor
Signature:
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

**19 August 2008**
¶126 University official writes: *"Dear Eugenna, I have had an opportunity to speak further with the staff members of our center who are in charge of our web based activities and they have informed me that they would not be able to provide the additional hours this quarter to support the project we had discussed. For this reason I'm afraid we will not be able to work with you on your independent study project. Thank you for your interest and I wish you every success in identifying a worthy project.*
*Jeffrey V. Johnson, Ph.D. Professor and Director, PAHO/WHO Collaborating Center for Mental Health*
*Member, Work and Health Research Center (WHRC) Department of Family & Community Health*
*University of Maryland School of Nursing 655 West Lombard Street Baltimore, Maryland 21201-1579*
*PAHO/WHO Office: Suite 480; 410-706-0185 WHRC Office: Suite 655(B); 410-706-0799*
*Cell phone: 410-733-7012 Fax: 410-706-0253  email: jjohnson@son.umaryland.edu home office email: jvjohnson@verizon.net WHRC Center website: http://nursing.umaryland.edu/excellence/whrc/index.htm "*

**20 August 2008** at 11:34AM Re: Clinical & Immunization
¶127 University notes: ". . . There is also a list on the s drive that has been available since April that lists all students who must update their immunization or CPR for the Fall 200 semester."(Note:  Violation of the HIPPA and Subtitle of the Annotated Code of Maryland).

**20 August 2008** at 11:54 AM:  Re: Clinical & Immunization
¶128 Complainant writes, "*I couldn't access the student list for CPR and/or immunization updates on s-drive.  What is my status and/or needs for CPR?*" (Note:  The Complainant did not request the University to disclose her immunization status in a medium, whereby others are able to access confidential medical status).

¶129 Per the coordinates of time and place, Taylor responded by resubmitting the item of interest. Taylor notified the University, verbal and in writing, that she remain complainant and satisfied the tuberculin test requirements, as she was working at the VA Baltimore Medical Center, a teaching-institution affiliated with the University.  Notwithstanding the University's knowledge of Taylor's relationship at the VA, a physician at the Center faxed two forms regarding Taylor's tuberculin test result, and Taylor mailed copies of results to the University.

¶130 The bottom-line:  The Complainant's PPD fax was successfully transmitted and received by the University.  Regardless of whether the University had ample human resource to address in-coming fax to prevent its loss and/or ensure it was received, liability remains with the University.  The University failed to demonstrate reasonable care and risk management of critical and sensitive items of nature.  This includes, but not limited to, exercising reasonable action and equipment maintenance and/or inspections required for normal business operations.  It is not the Complainant's responsibility to ensure the University is current on equipment maintenance (i.e., fax machines).  "Requirements," such as having Taylor present an acknowledgement medical clearance letter from University Student Health to professor Reese was staged and questionable.  It is unreasonable for the University to apply a "requirement" and/or otherwise, and penalize Taylor for conduct and/or deficiencies that occurred before University policy / "requirement" was announced and/or known to Taylor.

**9 September 2008** at 7:53AM.
¶131 Barbara A. Galliard (tele:  443-364-5584) of Sheppard Pratt e-mail notes:  "This is to confirm that Eugenna Taylor showed up at Sheppard Pratt at Ellicott City on Thursday, September 4[th] at 7:00 AM.  The University of Maryland students are scheduled to begin on Thursday, September 11."  (Note:  Complainant remained at Sheppard Pratt for several hours, waiting for clinical).

**9 September 2008** at 12:40 PM:  Re: Thursday Clinical Orientation-1
¶132 "_____(redacted) reported that you missed your September 4th clinical orientation at Sheppard Pratt without explanation or excuse. This is unprofessional behavior.  To avoid an undue burden on the clinical site you must attend a make-up orientation on September 11th at 8AM as specified in the notice from _____ (redacted). "

¶133 It is unequivocally clear that based on correspondences dated 09 September 2011, the University lied.

**11 September 2008** at 6:13 AM.
¶134 E-mail correspondence to University Helpdesk – "I have not been able to login to Blackboard.  The system states I do not have access authorization." (Note:  The University continued to manipulate the student's electronic registry and/or access (i.e., BlackBoard student accounts, registration, and etc.).

¶135 Taylor asserts that the University specifically barred her from access to educational resources and comparably equal privileges.  This particularly evident per the University having treated similarly situated students, namely Melanie Coffman and Tyree Morrison, not in the same protected class / sub-class as Ms. Taylor, more favorably.

Eugenna Aileen Taylor
Signature:
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

**11 September 2008**

¶136 In letter dated 11 September 2008, the University retaliates against the Complaint by dropping the Complaint out of NURS 511 in lieu of issuing an I (Incomplete); thereby, impacting the Complaints scholarship agreement, financial obligations, student status among other items. These adverse actions were employed, despite the Complaint having expressed concern for the aforementioned to the University President, Dr. Ramsay, as well as, other University staff.

¶137 The University's 11 September 2008 document references that the Complainant will be given the opportunity to retake NURS 511 during spring 2009. This opportunity was denied. The University lied.

**28 October 2008**

¶138 Maryland Higher Education (MHEC) Memorandum dated 28 October 2008 to Eugenna Taylor, from Elizabeth Urbanski, Associate Director Office of Student Financial Assistance; RE: UMB's Confirmation of Credits Fall 2008

¶139 *"This memo is to confirm that the University of Maryland, Baltimore certified on the Fall 2008 Billing Roster that you are enrolled for 9 credits. Your Graduate Nursing Faculty Scholarship was processed in the Amount of $4,498, which our office awarded to you on the basis of you being enrolled for 9 credits. Your Graduate Nursing Faculty Living Expenses Grant is now being processed in the amount of $12,500. It is expected that the Comptroller's Office of the State of Maryland will process and deliver the check to you in approximately four (4) weeks.*

**08 November 2008**

¶140 Letter received from Comptroller of Maryland P.O. Box 746 Annapolis, Maryland 21404-0746 is postal stamped 08 November 2008. Enclosure: Check for the State of Maryland – Treasurer's Office (Control ID 3849; Dated: 11/07/2008; Signed by Nancy K. Kopp and Peter Franchot). Check reads: Pay to the order of EUGENNA TAYLOR. The sum of 12,500 dollars 00 cents.

**10 November 2008 at 2:05 PM**

¶141 Taylor is a subject of recurrent abuse, intimidation and harassment practices. The University induced another under the color of law / official right to intimidate. On 10 November 2011, Taylor received a hand-written note from the University's police, Detective / CPL D. Boone. The note stating:

¶142 *"Not allowed in BLDG without permission."*

¶ 143 Taylor asserts that intimidation practices was in the form of prosecution, and the likes thereof, as a possible action from the University.

¶144 Taylor recalls 10 November 2008 as follows: On November 19, 2008 (~1:57 PM) I entered the School of Nursing Building and presented my school identification card to Security Officer Ms. L. Lea. This was in the presence of Mr. Tom Fahey, Director of Facilities Management. Ms. Lea informed me that I was not allowed in the building. I asked for an explanation, and she handed me a letter dated 17 November 2008; this letter was displayed in the presence of Mr. Tom Fahey. I indicated that I would like a copy of this letter. Shortly thereafter, Corporal Joseph Blackwell and Detective Corporal Daniel Boone arrived (Corporal Daniel Boone was very intimidating; based on his appearance; he stood over 6 feet tall and well-built/muscular). I indicated I would like the names of the persons as a witness that I would not permitted to enter the building. Names were provided. Detective Boone kindly provided his copy of the letter from Dr. Janet Allan dated 17 November 2008 and inscribed the time, date and details of the situation (please review the attached document). During the interim, I notice Ms. Evette Lesecne (I'm uncertain of the spelling of Ms. Evette's last name), my classmate in course NURS 769, and requested that she submit a hardcopy of my NURS 769 assignment to Dr. Johnson on my behalf. This assignment indicated paper/presentation #2 topics of interest.

**22 November 2008**

¶145 *"The e-mail of 11/21/08 sent at 11.37 am is the only correspondence other than re-sending the Letter that you received by e-mail on 11/20/08 2.15 pm I corrected the spelling of your b name. The rest of the letter remained the same. Janet Allan."*

¶146 University represents knew with substantial certainty that severe emotional and / or physical distress would be inflicted upon Taylor. This is primarily due to Taylor repeatedly requesting, both verbal and written, for the abuse, neglect, injury, harm (i.e. retaliation, harassment, and intimidation practices to stop. The University was willfullly blind to Taylor's pleads.

**Fall 2008 CONTRACT – CNL INDEPENDENT STUDY Course**

¶147 Unilateral changes to the Complainant's *contract* for CNL Independent Study results in a material change and conditions of the assignment towards the later part of fall 2008 semester. There is evidence that the Complainant was responsive and expressed concern and

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

07 Nov, 2011

concern regarding assignment changes.  The University did not indicate to the Complainant and/or otherwise those assignments, and/or the changes thereof, were to be addressed by close of semester fall 2008 to successfully pass and/or complete the requirements for the course. Timing of University's changes constitute at minimum, not only a material change to the terms and conditions of the assignment, but logistical time-dependent constraint on the Complainant's production of a quality paper.  Technically, the Complainant was not enrolled in the CNL Independent Study course per this technicality and oversight by the University.  The University should not be exonerated from the duty of proper and timely advisement, and/or further instruction/supplying and/or directing the Complainant with the necessary materials to complete and secure documents necessary for registration and/or course enrollment.

¶148 Contracts are presented in explicit terms and agreed by parties involved prior to fall 2008 registration.  The *contract* presented to Taylor fails to be enforceable.  More specifically, the *contract* presented  failed  to cite the terms and conditions for Taylor's assignments, and lacked definiteness in terms of not only for what is required but  expectations in essential terms,  required time-lines for paper submissions, closures, grading algorithms, as well as, any dates set for issuing course grade.  Moreover, the *contract* lacked mutual assent to which the instructor and the student expressly made known, and lacked appropriate signatures by charging parties and / or authorized agents to acknowledge all the terms and conditions necessary.  Consequently, Taylor reasonably believes that the University, purposefully offered to "facilitate acts" with ill will towards Taylor.  Prior to course registration, Goodwin engages in conversation with Taylor, Goodwin citing , "Don't worry, I know her (Dr. Kapustin) well" . . . . "I like her" . . . . "she's cool with me."  With that said, and the evidence present, Goodwin knew or should have reasonably known that presenting an unilateral *contract*, particularly close to the end of fall semester 2008, would present extreme and/or difficult time and resource constraints for Taylor; nonetheless, Taylor was issued a F grade for CNL Independent Study, a course not required for her degree requirements.

**05 December 2008**
¶149 University of Maryland, School of Nursing, from Jane Kapustin, Ph.D., CRNP writes:*"Dear Ms. Taylor:  This is to inform you that allegations of academic misconduct related to course NURS 679 in which you were enrolled fall semester 2008 have been made against you.  The allegations involve unprofessional conduct and violations of the School of Nursing Code of Conduct.  A Judicial Board pre-hearing involving this matter has been scheduled for Tuesday, December 9. 2008 at 3 pm in room 503 at which time you need to appear before the Board.  The Judicial Board process is outlined in the Judicial Board Procedure which is available online at www.nursing.umaryland.edu.  Sincerely, Jane Kapustin."*

**23 January 2009**
¶150 Dean Janet Davidson Allan addresses  a letter to Dr. Orlin citing:*"After extensive review following consultation with academic leaders in the SON, I have concluded in my best professional and academic judgment that Ms. Eugenna Taylor is not qualified to progress further in the graduate Clinical Nurse Leader (CNL) Program and should be dismissed.  My opinion is based on Ms. Taylor's deteriorating overall academic record, as well as her failure to meet the technical standard the program, with or without reasonable accommodation.  Ms. Taylor has recently continued that she does "not have any ADA claims (i.e. disabilities).*

**26 January 2009**
¶151  from Malinda Orlin; To: Taylor; Cc:  Janet D. Allan: *"Dear Ms. Taylor, I write to inform you that based on the recommendation of the School of Nursing (See attached letter from Dean Janet Allan dated January 23, 2009), you are dismissed from the University of Maryland Baltimore Graduate School Clinical Nurse Leader Program effective immediately.  Your record will indicate that you have been "academically dismissed."  You are not registered and may not attend classes or clinical placements.  If you wish to appeal your academic dismissal, as per Graduate School Policy on Appeal of Academic Dismissal, you have 10 working days to file your appeal.  The deadline for filing the appeal is close of business, Monday February 9. 2009.  If you wish to discuss the appeal process, you may contact Dr. Erin Golembewski, Associate Dean Graduate School, at 410-706-8323.  Sincerely, Malinda Orlin, PhD., Dean, Graduate School.  Attachments:  Letter Dean Jan*

**26 January 2009**
¶152 "Ms. Taylor, This letter will serve as written notice that your Housing License for Pascault Row Apartment 657-41G is being terminated by the University of Maryland, Baltimore ("UMB").  You must vacate Apartment 657-41G no later than 2:00 pm on Tuesday, January 27, 2007. Please remove all of your personal belongings and return your apartment key, mailbox key, and UMB One Care to the UMB Residence Life Office at 518 W. Fayette Street, Baltimore, MD  21201. The reason for this termination is as follows:
The UMB Residence Life Office has been notified that you have been dismissed from the Graduate School
See page 2, section 11 of the Pascault Row Apartment Housing License 2008-2009 "Termination"
According to the terms of your Housing License, you must vacate the Apartment within 24 hours of termination by UMB.

¶153 "If, for any reason, you fail to vacate by 2:00 pm Tuesday, January 27, 2009, your electronic building access will be terminated, and the locks on your apartment will be changed.  As of this time, the University will not be responsible for your personal belongings and you will need to make arrangements through the Residence Life Office to retrieve these items.  "If you have any questions regarding this matter, contact the Residence Life Office at 410-706-7766.  Sincerely, Nicole M.Miskimon, Assistant Director, Auxillary Services  CC:  Irma robins, University Counsel; Chief Cleveland A. Barnes, UMB Police; Malinda Orlin, President for Academic Affairs / Dean, Graduate School"

Eugenna Aileen Taylor
Signature:
Mailing:  PO Box 241 Waldorf, MD  20604
Telephone Numbers:  404.542.0113; Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

¶154  Taylor had reasonable fear that the University, and more specifically, Dean Allan would immediate find means to "throw her out-on-the-streets" and they / she had means of doing so.  The possibility of prosecution created undue fear.

¶155 Repeatedly, the University characterized Taylor as unworthy of credit, unworthy student, unworthy of trust, and unworthy to qualify.  The University acted to intent to injure and punish Taylor.  On 26 January 2009, Taylor was deemed unworthy to remain on campus.

¶156 As in previous semesters, summer 2008 and spring 2009, the University's pattern to deny the Complainant of resources and/or matriculation in the CNL Program is marked.  Based on records, Title VI of the Civil Rights Act of 1964 is evident.  On 22 January 2009, the University cites for the Complainant to adhere to a remedial plan and a face-to-face meeting, one day after the commencement of spring 2009 in-class sessions.  The Complainant requests several times in advance to view the remedial plan prior to the specified meeting date.  The University refuses the Complainant's requests.  On 22 January 2009, the University offered an inappropriate and widely tailored remedial plan and that failed to achieve any legitimate purpose and/or necessity.  This plan appeared to offer a non-discriminatory purpose, yet to the contrary, the plan reflected the University's adverse motivation and compelling interest, at minimum, to purposely misrepresent, falsify, and discredited the Complainant's racial and sexual harassment claims, academic records, and character.  The remedial plan asserted through a series of defamatory statements and records, that the Complainant was behaviorally and academically unqualified to receive the Maryland Higher Education Scholarships and Grants, continue her matriculation at the University, and thereby, purposefully limiting the number of African-African scholarship recipients and/or future teacher at the University and/or other institutions of learning.

¶157 The University's judgments and actions did not constitute a sufficient cause for Taylor to be dismissed from school and/or participation in the University's appeal process.  In January 2008 a compensatory mechanism was offered. The University offers Taylor a motion to appeal dismissal from the University.  Taylor exercised her write to appeal the dismissal and indicated the necessity of filing a lawsuit.  Taylor's appeal was submitted to the University.  The University failed to properly acknowledge and take actions relevant to the appeal, refused to engage Taylor's motion to appeal at the University, and thereby, the University continues to deny Taylor from federally funded University resources and possibly benefit from the University internal appeal process in concert with Taylor's decision to pursue other forms of legal action.

**CLOSING REMARKS**

¶158 The facts set forth in this document establish a direct, if not causal link, between the alleged wrongdoing and claims submitted to the government for continued financial benefit.  Characteristic examples illustrative of fraudulent scheme involve a dissembling, complex and far-reaching scheme to increase federal subsidies and continued issuance of state loan programs, while and when applicable, to deny students' constitutional / civil rights  claims and allegations of  fraud.

¶159 The determination for this case is perhaps one of several steps to engage in collective initiates to appropriately respond to the University's orchestrated assaults against Taylor and governments, and to deter future egregious acts.  This case represents a landmark case regarding a particular federally protected class, and demonstrates that an entity (i.e. the University) was willing to abuse the distribution of federally / state funded provision and resources while masking assaults on a protected class well beyond legal and / or ethical parameters.  This includes, but not limited to the University's conspired and stand-alone intentional and purposed manipulation of grades, registries and /or accounts to produce a predetermined distribution and select population of students to be harmed through the University's coercion, actions in altering students' academic matriculation, retention of scholarship and / or grant monies, as well as, violate constitutional / civil rights., yet perhaps more disturbing, to ensure the continuity of *kickbacks* in the form of tenures, contracts, professional upward mobility and reciprocated acts of favor.

¶160 From 2007 and to date, Taylor continues to be severely crippled by the University's continued wrongful conduct.  As such, the conduct materialized a continuing nexus to the specific harm Taylor suffered.  In 2009, Taylor endured periods of homelessness, transient and otherwise (i.e., extended periods of homelessness), and frequently lived in her 2001 Toyota Corolla that was impacted in 2008 automobile crash and in need of maintenance and / or repairs.  To date, repair needs remain outstanding.  Living in her automobile, Taylor is without the convenience of basic amenities such as a toilet, shower, refrigerator, stove, and exposed to extreme temperatures and undue risks.  Taylor's situation continues to be confounded by her deteriorating and / or capricious health status, periods of unemployment and / or "temporary" / low-wage employment which enforced a peculiar form of physical and economic restraint, exacerbated financial crises, limited political power, uncertainty and unreasonable risks of harm.  During periods without adequate food, gasoline for travel, and telephone to communicate with law enforcement and otherwise, psychological terror and marked physical challenges accompanied Taylor.

¶161 Taylor asserts that the University's conduct was extraordinary in manner, and characterized and / or accompanied by fraud, malicious intent, wantonness, reckless disregard for Taylor's well-being.  As such, Taylor's suit and supportive documents exemplifies the degree of culpability exhibited usually imposed in cohort. In furtherance of her claims, Taylor relies on the testimony of expert witnesses / opinions from one or more sources:  (1) treating physician, (2) presentations at trial and (3) presentations of data outside of court.  As such, Taylor requests that the court allow Taylor to testimonies of expert opinions / witnesses, essential to Taylor's claim, at a future date.

Eugenna Aileen Taylor
Signature:                                                           07 Nov. 2011
Mailing:  PO Box 241 Waldorf MD  20604
Telephone Numbers:  404.542.0113;  Fax Number:  Taylor does not have a fax number to provide
Email Address:  eugennataylor@yahoo.com

¶162 Collectively, Taylor seeks $19.2 million in punitive damages, approximately $2.7 million in treble damages, excluding entitlements for relief per the United States False Claims Act and Maryland False Health Claims Act qui tam provisions. Taylor notes that summary judgments may be appropriate for punitive, treble and /or compensatory damages per "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Eugenna Aileen Taylor
Signature:
Mailing: PO Box 241 Waldorf, MD  20604
Telephone Numbers: 404.542.0113; Fax Number  Taylor does not have a fax number to provide
Email Address: eugenhataylor@yahoo.com